Hillsborough, {
March 3, 1936. }

MORRILL BARLOW *v.* HAROLD E. VERRILL *& a.*

*John B. Cavanaugh, Doyle & Doyle* and *John J. O'Reilly, Jr. (Mr. Paul J. Doyle* orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendants.

BRANCH, J. The plaintiff owns and operates a gasoline station

located upon the Daniel Webster Highway in the town of Bedford. Approaching from the south, the road descends a considerable hill, and the plaintiff's station stands at the foot of the grade. Upon February 2, 1932, the defendant Verrill was operating an automobile belonging to the defendant partnership upon the above mentioned highway, and had with him as a passenger an elderly man named Emile Caron who did not "know anything about driving an automobile" and did not "know how to start them or stop them." At some point south of the plaintiff's filling station the car stopped because, as Verrill supposed, it had run out of gasoline. The evidence as to the exact spot where this occurred was conflicting, but it all tended to show that it happened at a considerable distance south of the top of the hill above the plaintiff's premises. Verrill thereupon decided to "walk to Mr. Barlow's filling station and get gas," leaving the car parked beside the road with Caron either in or near it.

Thereafter a witness named Lamarie, who was also walking to the plaintiff's filling station to purchase cigarettes, passed the defendants' car and testified that he saw a man standing beside it; that when he "got about in the center of the hill" the same car passed him with the engine running; that the man in the car was the one he had seen standing beside it; that after it passed him, the car "drove into Barlow's" but finally stopped upon the opposite side of the highway.

From other testimony in the case it appeared that the car came down the hill at a considerable speed, with Caron at the wheel, turned into the plaintiff's filling station and struck the plaintiff who was then engaged in filling a can with gasoline, then turned in the opposite direction and was finally stopped by a large boulder on the opposite side of the road.

The story told by Caron on the witness stand was that the driver of an unidentified car volunteered to give the defendants' car a push and persuaded him to take the wheel; that the defendants' car was then pushed to the top of the hill, after which it gained speed and he was unable to control it.

The defendants' argument is that the plaintiff failed to make out a case because it was not shown either, 1. that the defendant Verrill was negligent in leaving the car as he did; or 2. that such negligence, if proved, caused the accident.

The witness Lamarie testified positively that when the defendants' car passed him on the hill the motor was running. Caron testified with equal emphasis that he did not turn the ignition key or put the car into gear after Verrill left. An expert witness, called by the

plaintiff, testified that "if the car gets running the ignition switch must have been on, and if it was moving on the highway, it must have been in gear." From this testimony it is a permissible inference that when the defendant Verrill left the car, the ignition was turned on and the car was in gear. The possibility that a car in this condition might be moved or started by unauthorized persons is sufficiently obvious; and in passing upon "the crucial question of whether it was properly parked," (*Fuller* v. *Magatti*, 231 Mich. 213) the jury may well have found that due care required that precautions be taken against the happening of such an occurrence. *Tullgren* v. *Company*, 82 N. H. 268, 276. Verrill himself testified that "that would not have been the proper way to have left the car," and he might properly be found negligent in leaving it in such condition.

This brings us to a consideration of the defendant's second proposition, namely, that even if Verrill were found to be negligent in leaving the car as he did, there was no evidence that such negligence contributed to cause the accident. More specifically the argument is that there was no evidence to show what caused the car to start unless Caron's story of the officious motorist be accepted as true. The testimony of the witness Lamarie that the motor was running when the car passed him would clearly justify a finding that it was then proceeding under its own power, and the plaintiff argues as follows: "It seems that in view of the testimony it was within the province of the jury to find that the defendant left the automobile in gear and with the ignition on, and that the person left in charge unknowingly stepped on the 'starter' and thus the car got started."

It is unnecessary to decide whether the facts above stated would justify all these inferences, since there is definite evidence that some such occurrence actually took place. The witness Joseph Rochette testified that immediately after the accident he asked Mr. Caron how it happened and "the first statement he made to me was he got into the car and the car started and he didn't know how to stop the car. ... It started and he didn't know what made it start." Although this testimony was obviously hearsay, it was admitted without objection by the defendant and without any suggestion of limitation as to its use. Caron had not at that time testified and it cannot, therefore, be assumed that it was admitted for the purpose of contradicting him. In fact, it would appear that the defendant was quite willing that Rochette's testimony should be received because he also testified that Caron subsequently told the story of the passing motorists who pushed him to the top of the hill.

Under these circumstances the jury were entitled to give weight to Caron's extra-judicial statements in support of any finding which they logically tended to prove.

"The initiative in excluding improper evidence is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion, deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of evidence." 1 Wig. Ev., s. 18. Hence follows the general rule oft repeated in the decisions of this court in the following terms: "Ordinarily, objections to evidence, unless made when it is first introduced and its bearing understood, will be considered to have been waived." *Story* v. *Railroad,* 70 N.. H. 364, 379, and cases cited; Hening, N. H. Dig., 681-682, 1239-1240. As a corrollary of this rule it necessarily follows that relevant evidence received without objection may properly be considered by the trier of fact, although it would have been excluded if objection had been made. This is undoubtedly the general rule prevailing everywhere in this country. See 64 C. J. Tit., Trial, s. 239; Am. Dig., Tit., Trial, s. 105. The application of this rule to hearsay testimony is clear upon principle and established by the overwhelming weight of authority.

The hearsay rule is merely an exclusionary principle limiting admissibility and in no sense a canon of relevancy. It involves no assertion that hearsay statements are without probative force or that they furnish no logical basis for conclusions of fact. On the contrary, if relevancy were not assumed, no special rule of exclusion would be required. Unless it were logically relevant hearsay would be excluded by virtue of the fundamental axiom of evidence that "none but facts having rational probative value are admissible." 1 Wig., Ev., s. 9. "In judging . . . as to the real scope and juridical value of any rule of exclusion like that rejecting hearsay it is necessary to bear in mind that such an exclusion can apply, properly speaking, only to that which is already evidence. The hearsay rule cannot be invoked to exclude statements which are merely irrelevant." 4 Chamberlayne, Ev., s. 2722. "The Hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible." 3 Wig., Ev., (2d *ed.*) s. 1424. Consequently it is established law, supported by an immense number of decisions, that hearsay testimony when admitted without objection is to be considered and given its logical probative effect. In *Diaz* v. *United States,* 223 U. S. 442, 450 the principle was stated as follows: "So, of the fact that it

was hearsay, it suffices to observe that when evidence of that character is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible. *Damon* v. *Carrol,* 163 Mass. 404, 408; *Sherwood* v. *Sissa,* 5 Nev. 349, 355; *United States* v. *McCoy,* 193 U. S. 593, 598; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1, 9; *Neal* v. *Delaware,* 103 U. S. 370, 396; *Foster* v. *United States,* 178 Fed. 165, 176."

As typical of the great number of cases in which this principle has been recognized and applied reference may be made to the following: *Commonwealth* v. *Wakelin,* 230 Mass. 567; *Faircloth* v. *Company,* 286 Mass. 320; *Taplin* v. *Harris,* 88 Vt. 15; *Poliner* v. *Fazzino,* 105 Conn. 350; *Ford* v. *Snook,* 205 App. Div. 194; *Poluski* v. *Company,* 286 Pa. St. 473; *Struth* v. *Decker,* 100 Md. 368; *Thompson* v. *Lillegaard,* 154 Minn. 142; *Reid* v. *Company,* 189 Ia. 964; *Hege & Co.* v. *Tompkins,* 69 Ind. App. 273; *Mercantile Trust Co.* v. *Company,* 176 Cal. 461; *Egli* v. *Hutton,* 135 Ore. 175; *Combs* v. *Company,* 121 Neb. 5. For other cases to the same effect see 64 C. J. Tit., Trial, s. 242; 46 Cent. Dig. Tit., Trial, ss. 172, 177, 261; 19 Dec. Dig. Tit., Trial, s. 105; 22 Dec. Dig. 2d Tit., Trial, s. 105; 26 Dec. Dig. 3d Tit., Trial, s. 105; Current Dig. Tit., Trial, s. 105.

Although the rule above stated does not appear to have received formal expression in the opinions of this court, it has been given practical effect in a number of our decisions. Thus in *State* v. *Daniels,* 44 N. H. 383, where the defendants put in evidence certain school catalogues, from which the county solicitor read in his argument to the jury, the court said: "The catalogues were not competent evidence. If they had been objected to by the State, they could not have been introduced. They were mere hearsay; the statements, without oath, of the unknown parties who prepared them ... They were introduced by the defendants, and they can not object to them; and it would seem, from the manner of their introduction, that the solicitor and court might properly have understood, and no doubt did so, that the catalogues were put in evidence for all purposes. Nothing was said by the defendant's counsel to the contrary, until the solicitor began to comment upon them, and we think the objection came too late."

In *Walker* v. *Walker,* 64 N. H. 55, it was said: "The agreement of the parties, 'that each might give in evidence the acts and sayings of the other, tending to show an uncomfortable, bad temper generally, as bearing upon the probability as to which of the two was most in fault in the matter on trial,' estopped the defendant from objecting

to the evidence excepted to and makes it unnecessary to inquire whether it would otherwise have been admissible."

In *Spinney* v. *Meloon*, 74 N. H. 384, hearsay testimony had been introduced by the defendant who later made a motion to strike it out. The plaintiff objected to this motion and it was denied. Commenting upon this situation, this court said: "the court refused to strike out the evidence because of the plaintiffs' objection to this course, and not because the trial justice found that he could not free his mind from the impressions produced thereby. ... If they [the plaintiffs] have been prejudiced, it is because their evidence was considered—not because it was admitted; and since it would not have been considered if they had not insisted that it should be, their exception must be overruled."

In *Wheeler* v. *Contoocook Mills*, 77 N. H. 551, it was said, "The exception to the statement of a witness, that he heard that Ham represented an insurance company, is not well taken. The statement was not called for, and there was no motion to strike it from the record. The court was not asked to rule upon its admissibility, or upon its being allowed to stand as a part of the evidence."

The obvious effect of all the above decisions was to permit the triers of fact to consider for what it was worth, hearsay evidence which found its way into each case because of the failure of the complaining party to protect his rights, or his waiver thereof.

In the light of the foregoing discussion we conclude that there was evidence from which a jury might properly find both that the defendant Verrill was negligent, and that his negligence was in part the legal cause of the accident. The order must, therefore, be

*Judgment on the verdict.*

All concurred.