OMER W. KIRBY, Alias, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

379 S.W.2d 780

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

Ely & Ely, Knoxville, for plaintiff in error.

George F. McCanless, Attorney General, Walker T. Tipton, Assistant Attorney General, for the State.

Mr. Justice White delivered the opinion of the Court.

The plaintiff in error was convicted for violating T.C.A. sec. 39-1904 (obtaining an automobile by means of a worthless check), and sentenced to serve five years in the State Penitentiary.

He filed a motion for a new trial, contending there was no evidence to support the verdict and that the evidence preponderated against the verdict and in favor of his innocence, and further that the punishment assessed by the jury was excessive.

The motion was amended by assigning for error the action of the court in instructing the jury that it was unnecessary to give the ten days notice of dishonor of the check by the bank as normally required by the statute because the check was returned marked "account closed". The statute provides that if the drawer or maker does not have an account, the notice is dispensed with but there is no provision in the statute for dispensing with notice where the check is returned because of "account closed".

The trial judge overruled the motion for a new trial, as amended, resulting in this appeal in which two errors are assigned. One is that the court erred generally in overruling his motion for a new trial as amended, and two, it was error to instruct the jury that since the check was returned by the bank marked "account closed" it was not necessary that the ten days notice as provided by the statute be given.

■ There is a supplemental brief containing additional assignments of error, but they cannot be considered by us because they were not contained in the motion for a new trial.

■■ Questions raised for the first time on appeal will not be considered, or stated in another way, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial. See *Ex parte Calhoun,* 187 Tenn. 372, 215 S.W.2d 789 (1948); *Parker v. Reddick,* 196 Tenn. 472, 268 S.W.2d 357, 45 A.L.R.2d 1086 (1954), and Rule 14(5), Rules of this Court, which provides in part:

"This is a court of appeals and errors, and its jurisdiction can only be exercised upon questions and issues tried and adjudged by inferior courts, the burden being upon the appellant, or plaintiff in error, to show the adjudication, and the error therein, of which he complains."

The facts in this case are quite simple and are presented to us in narrative form, which we consider to be most satisfactory for easy reading and understanding.

On December 17, 1962, the defendant negotiated for the purchase of a used car from Maples and Davis Motor Company of Knoxville. When a price had been agreed upon the defendant gave to the seller his personal check in the amount of $490.25, drawn on Park National Bank of Knoxville, in payment for the car. The check shows on its face that it was given "for '54 Chevy—in full", and then the motor number of the automobile is stated on the face of the check, and this check is signed, Omer W. Kirby.

As soon as the transaction was concluded the defendant got in the car and left the place of business of the Motor Company, and later that night drove the car to the State of Florida where it was abandoned by him in the City of Miami because it broke down, according to his testimony.

The narrative bill of exceptions states that the seller became "leery" of the check and ascertained from the bank that it was not good. He then undertook to locate Kirby by going to his father's home. Upon learning that he had gone to Florida he checked again with the bank on the following morning and found that Kirby's bank account had been closed. Immediately thereafter he swore out a warrant for the arrest of Kirby.

The check and the bank slip showing the reason for failure to honor the check, the same being "account closed", are both in the record.

An official of the Park National Bank testified that Omer Kirby, did have an account with the bank but it had not been active since February 19, 1959. The ledger sheet of his account is in the record and it shows a deposit of $400.00 on February 9, 1959 and withdrawals charged against it on February 11 and 12, leaving a balance in the account on the date of February 13, of $2.95. On February 19, 1959, this sum was debited from this account because of charges made for the handling of previous checks that had been written, but returned because of insufficient funds which is the only conclusion that could be reached from the statement of the officials that "the bank had closed the account out because of previous checks that had been written but had not been honored."

The defendant is bound to have known of these returned checks and we do not see how he could escape knowing that his account had been closed and that he no longer had an account with Park National Bank of Knoxville.

The defendant testified that he purchased the automobile; that he gave the check therefor, but that he told the seller at the time that the check was not good, but that he would make it good the first of the week, and he further testified that Mr. Maples, the seller, agreed to hold it until that time. Where or how he intended to acquire the money is not shown by the proof. According to his statement, he was then employed by his brother as a produce truck driver, earning only $50.00 to $75.00 per week.

The defendant also contended that he had to abandon the car in Florida because it was no good and that he notified Mr. Maples of this fact. Maples agreed to take $250.00 in cash for the car, but refused to rescind the sale and take it back, according to the defendant.

On direct testimony and on rebuttal Mr. Maples denied that he agreed to hold the check, or that Kirby told him that the check was not good, but that it would be made good at a later date. He denied also that he agreed to take $250.00 in cash for the car after it was abandoned in Florida. As a matter of fact he said that he had not talked to the defendant since the warrant for his arrest was taken out the day following the sale and purchase of the car, and that he didn't know where the car was until the defendant testified at the trial that he had abandoned it in Florida.

The testimony of the salesman Davis is to the effect that the check was accepted in good faith and without notice that it was not then good but would be made good at a later date.

The defendant admitted, at the time of the trial, that he was then confined in the State Penitentiary for having given bad checks in Sevier County, Tennessee, but that this conviction occurred after he gave the check to the prosecutor in this case, and that the conviction in Sevier County was his first conviction.

The witness, Gene Autry Lane, testified that he had known Kirby for some time and that by chance he was present at the place of business of the prosecutor when the purchase of the automobile was made by Kirby. He heard Kirby say that the check was not good, but would be made good and that he saw the prosecutor and Kirby exchanging papers, although he did not know what they were. The jury, no doubt, thought it significant, as we do, that Lane drove with Kirby to Florida that night.

Of course, this case comes to us with a presumption that the defendant is guilty as charged as determined by the verdict of the jury and the judgment of the court thereon. He has upon him, here, the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. The verdict of the jury, which has been approved by the trial judge, accredits the testimony of the witnesses for the State and establishes their credibility.

Of course, the jury and the trial court see and hear the witnesses, observe their conduct and demeanor while on the witness stand, and otherwise weigh the value of the evidence given by them, and from this reach a con-

clusion about the truth of the situation. As indicated, it is not within the scope of our review to disturb such finding unless, of course, the evidence preponderates against the verdict of the jury and in favor of the innocence of the accused.

■ The accepted charge in a criminal case by the trial judge is that the jury has the burden of reconciling conflicts in testimony if they can, without arbitrarily rejecting the testimony of any witness, but if they cannot do so, then it becomes their duty to accept the true and correct testimony and reject such testimony as they find to be without foundation. See *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1961), and other cases there cited in support of these general and well recognized principles of law.

■ From reading this narrative bill of exceptions we are fully satisfied with the correctness of the verdict of the jury and the judgment of the trial court on the facts of this case.

There remains only for disposition the question of whether or not the exception in T.C.A. sec. 39-1904, dispensing with the necessity of notice as a condition precedent to a criminal prosecution, was applicable to the facts of this case. And, whether or not, based upon such facts, the court was justified in charging the jury that it was not necessary to give the ten days (now changed to five days by Section 1 of Chapter 238, Public Acts of 1963) notice ordinarily required by the statute where checks are returned because of insufficient funds in view of the fact that this account was marked ''account closed''.

The pertinent portion of said Code section is:

"* * * [i]f the drawer or maker does not have an account with the bank or person upon which such check, draft or order is drawn, the notice required in this section is dispensed with."

The defendant contends that the account was closed by the Bank by making charges against it for the cost of handling previously dishonored checks and that the defendant was not aware that his account had been closed. The jury found against this insistence on the factual situation and we agree with the jury.

The defendant contends that the trial judge read into the statute words which were not there, to-wit: "account closed", and that the trial judge, by interpretation, said that if the account was closed by the Bank it amounted to "having no account" within the meaning of the Act.

The purpose of requiring notice is to give knowledge to one acting in good faith that his account is overdrawn, thereby affording an opportunity to replenish the account. However, if the account has been closed whether by action of the bank or by the drawer of the check, the result is exactly the same as if no account existed.

The fact is that this defendant gave a check upon a bank where he had no funds. He had notice of the fact that he had no funds, such notice coming to him through the giving of prior checks which were returned. Of course, it is common knowledge to all that under present day banking conditions that a charge is made for expenses in connection with returning checks which overdraw accounts. The jury found that this defendant knew that his account had been closed and, therefore, that he, in fact, had no account with the Bank upon which he drew this check.

■ We cannot see any difference between having no account and having had an account which has been closed. They both mean that this defendant had no money in the Park National Bank and he had knowledge of this fact. Despite this knowledge, he procured by fraud an automobile and then abandoned it in the State of Florida.

We have read the cases cited in the defendant's brief but we find that they have no application to the case at bar.

Judgment affirmed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.