GEORGE PATTERSON

*v.*

STATE OF TENNESSEE.

400 S.W.2d 743.

(*Knoxville,* September Term, 1965.)

Opinion filed March 9, 1966.

BERNARD E. BERNSTEIN and RAY LEE JENKINS, Legal Aid Clinic, Knoxville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and EDGAR P. CALHOUN, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Patterson was indicted for the crime of burglary and assault and battery with intent to commit rape. The offenses have been charged in separate counts in one indictment. Upon a plea of not guilty the jury found Patterson guilty on both counts and fixed his punishment at nine years in the penitentiary for burglary and twelve years in the penitentiary for assault and battery with intent to commit rape. The judgment of the court was that Patterson serve not less than five years nor more than nine years in the penitentiary for burglary and that he serve not less than ten years nor more than twelve years in the penitentiary for assault and battery with intent to commit rape. The sentence for the second offense was to begin at the expiration of the sentence for burglary. An appeal has been seasonably perfected upon a narrative bill of exceptions; able briefs filed and arguments heard. After a thorough study of the matter we are now in a position to decide the case.

Factually the record shows that one Sue Dyer, age thirteen (13) at the time of the event, went to sleep on August 29, 1964, in the same bed with a little sister and her grandmother at their home in Knoxville. Sue awoke about 6:00 a.m. on the following morning with dogs

barking both inside and outside the house and a Negro man at her bed running his hand over her and trying to take her shorts off. She screamed and the man told her to shut up or he would kill her grandmother. The intruder also said that he did not want money.

There was a light in the kitchen a short distance from this bedroom and she could see that the intruder had a knife in his hand. Later, this intruder forced the occupants of the house to go inside the kitchen and there he had a pistol.

The mother of this little girl testified that she awoke because the dog that stays in the house was barking and biting her on the toe. She said she heard screaming and talking and ran to her daughter's bedroom and saw the intruder who told her, the mother, that he would kill her and told her, "You know what I want." The intruder had forced them all into the kitchen where he tried to take the teen-age girl's shorts off. He was feeling over her body and he had backed the teen-age girl into a corner and tried to feel of her privates. The girl was crying and pleading with him to leave her alone.

At about this point the mother of this little girl offered the intruder money but he stated he didn't want money. The mother also told him that "If that's what you want leave that child alone and take me." Temporarily the defendant left the child and tore the buttons off the mother's blouse and ran his hands over her body. The mother testified that he tried to rape her. The dogs were barking so loud outside that the defendant went to the door and looked out with the mother right behind him. The mother kicked or shoved him out the door, slammed it shut and locked it. The husband and father of the little girl had left home about 4:30 that morning for work.

After this occurrence the mother went to a fire hall and called the police and gave them a description of the assailant. The police officers arrested two Negroes and brought them to her house and she told them that neither one was the defendant. Later they called the mother and child to come to the city jail and view a line-up of three colored men and some white men. At this line-up the daughter and mother identified Patterson as the intruder.

The grandmother testified in this case and her testimony was the same as that of the little girl and her mother. A city detective who investigated the case stated that he found on the outside of the house a bedroom window broken open with mud smears on it, the glass was broken out and the screen pushed in. There was a muddy footprint under the window.

At the time these men were in this lineup Patterson was wearing a goatee, but it had been shaved off on the morning before the trial.

The defendant testified in his own behalf and said that he had never seen the woman before he was identified in the line-up and that he did not commit the crime and that on that night he was at home in bed with his wife. His wife corroborated his testimony.

The assignments of error are to the effect, one, that the court refused to instruct and charge the jury with regard to lesser included offenses and erred in refusing to give a special request to this effect, which was:

"If the evidence is such, that you do not think there has been a showing of intent to commit rape, you may find from the evidence that the defendant is guilty of an assault with intent to commit a felony or merely of assault and battery or of no offense."

The second assignment is that the trial court erred in refusing the defendant a new trial because there was no material evidence to support the verdict. The third assignment is that the evidence preponderates against the verdict and in favor of the innocence of the accused.

■ Of course, the special request, as above quoted, deals only with the conviction for assault and battery with intent to commit rape. To convict one of an assault and battery with intent to commit rape it is necessary that there be an assault and battery upon a female who is at least twelve years of age or older and that there be an intent to have unlawful carnal knowledge of her forcibly and against her will. T.C.A. sec. 39-605; *Rhodes v. State*, 41 Tenn. 351.

It is noted from what we have said above about the factual situation here that the prosecution for this crime concerns only the thirteen year old girl, that is, the indictment charges an assault and battery with intent to commit rape upon the child—not upon the mother or grandmother.

It seems clear to us, and we are satisfied beyond peradventure of a doubt, that the evidence is clear, convincing and completely undisputed that this assailant did make an assault and battery upon this child and that his actions were all directed at having carnal knowledge of this child—he even announced such as his purpose. It is likewise clear that all of this was done against the will of the child. There was no threat to kill the child.

Thus it is, under this factual situation the only issue presented to the jury in this case was the question of whether or not the defendant was the assailant.

The argument is very forceful that the trial judge erred in not charging as to the lesser degree of the crime or included offenses, and this is primarily based upon our statute, T.C.A. sec. 40-2518, which reads:

"It shall be the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so."

It is the holding by the overwhelming majority of State and Federal Courts when on the evidence the accused might be convicted of a lesser degree of the offense charged, or an included offense, that it is the duty of the court to charge all the degrees of the particular offense. "But if it is clear from the evidence that a lesser degree of guilt is not involved, it is not error for the court to refuse the request for, or to fail to give such instructions." Wharton's Criminal Law and Procedure, Anderson, Vol. 5, sec. 2099, page 268. Followng this quotation cases from many jurisdictions are cited including annotations in 21 A.L.R., 603; 27 A.L.R., 1097; 102 A.L.R., 1019. And, as said on page 270 of Wharton, the reason it is not necessary to give the charge "as to which there was no evidence, the theory being that he is not prejudiced thereby and cannot complain."

■ Our cases, that is, cases of the Supreme Court of this State, teach this same thing. In other cases, hereinafter cited, it is held that this statute (T.C.A. sec. 40-2518) was not intended to call from the court a charge upon hypothetical cases not suggested by the proof, and

failure to charge as to all degrees of offenses included in the offense charged in the indictment is not error, where the facts proved clearly do not require it. *Good v. State,* 69 Tenn. 293; *State v. Parker,* 81 Tenn. 221; *Powers v. State,* 117 Tenn. 363, 97 S.W. 815; *Frazier v. State,* 117 Tenn. 430, 100 S.W. 94. This same line of reasoning was in very recent years followed by this Court in *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563, wherein we held that it was not reversible error for the trial court to fail to charge a lesser offense of an attempt to commit a felony when a defendant, on a trial for rape, was convicted of assault and battery with intent to commit rape.

■ The plaintiff in error relies heavily upon the opinion of this Court in *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224. In the first place *Strader* must be confined to the particular facts of that case. Under the facts there presented it did appear that there might be evidence to the contrary. In this case we held that where the evidence upon any view that the jury might take of it permits an inference of guilt of a lesser included offense it is mandatory to charge all the law as to each of such offenses. The facts in *Strader* though are far from those as presented herein. It is true that in this case there were no special requests to charge the lesser included offense but under this statute and under the facts of the *Strader* case we held that it was error not to charge such lesser included offense. In other words, all *Strader* teaches is that where there are issues raised by the evidence of lesser included offenses then it is necessary to charge these, even if there were no special requests to do so.

■ This special request herein was properly refused because there was no evidentiary fact upon which such should, or could be based. *Strader,* it seems to us, adheres

to this principle, that the charge of lesser included offenses is necessary only when the evidence requires it.

■ It has long been settled in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of witnesses for the State and absolves all conflict in favor of the theory of the State. Such a verdict also removes the presumption of innocence, which the accused starts out with and raises a presumption of guilt and puts upon him on appeal the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826. This holding and reasoning may be found in a legion of cases by Shepardizing the *Cooper* case.

■ The only issue, as said above, for this jury was one of identity, and a careful reading of this narrative bill of exceptions clearly shows that the identity was positive and there was no uncertainty on behalf of the witnesses who identified this man. The further fact that on the morning before the trial he shaved off his goatee was some indication of the fact that he was trying in some way to make his looks different from that of the person who committed this offense. This question of identification is universally accepted by both Federal and State Courts to be one of fact for the jury or trier of facts. Wharton's Evidence in Criminal Cases, 11th Ed., sec. 935, page 1637.

■ The whole defense in this lawsuit was that of an alibi, or that the man was not present on this occasion but was at home in bed with his wife. Patterson so testified and denied any connection whatsoever with this crime. No evidence was offered and no issue was raised but that the crime charged was that of an attempt to rape. No

evidence was offered and no claim was made tending to dispute the circumstances of the crime, or to reduce the grade of the offense. As the evidence stood, if Patterson was identified beyond a reasonable doubt as the one who perpetrated the crime, he was guilty as charged in the indictment. If the evidence did not so identify him as the perpetrator of this crime then he was entitled to an acquittal. We think there was no foundation for any intermediate grade, and thus the trial court properly charged the jury the statute of such a crime as here charged and refused to charge for any lesser degree of the crime. Thus it was, if the man was not guilty of this crime, he was entitled to be acquitted.

■ Of course, in all criminal cases the charge of the court should be limited to those features which the evidence tends to support. The charge should not go beyond the indictment unless the evidence shows to the contrary.

Many years ago in *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 E.Ed. 343, the Supreme Court of the United States made certain statements which are applicable herein. Among other things the Court said:

"Upon a careful scrutiny of the evidence, we cannot find any ground whatever upon which the jury could properly have reached the conclusion that the defendant Hansen was only guilty of an offense included in the one charge, or of a mere attempt to commit the offense charged. A verdict of guility of an offense less than the one charged would have been in flagrant disregard of all the proof, and in violation by the jury of their obligation to render a true verdict. There was an entire absence of evidence upon which to rest a verdict of guilty of manslaughter or of simple assault.

A verdict of that kind would have been the exercise by the jury of the power to commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law.''

In this case the Supreme Court therein cited cases from many states, as well as their own cases and distinguished when such a charge as this herein sought for should be given.

After a careful study of the matter in question we are satisfied that the trial court was correct and we conclude that unquestionably what we have said herein is the law in regard to situations of the kind. It thus results that the judgment below must be affirmed.