# DONALD LEE HANCOCK, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. May 28, 1968.

Certiorari Denied by Supreme Court Sept. 3, 1968.

118

Shelby L. Haywood, Lewisburg, Philip M. Carden, Nashville, for plaintiff in error.

George F. McCanless, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

**OLIVER, Judge.**

Plaintiff in error, the defendant below, was convicted of armed robbery in the Circuit Court of Bedford County, and was sentenced to fifteen years and one day in the penitentiary. His motion for a new trial being overruled, he prayed and was granted and has perfected an appeal in the nature of a writ of error to this Court.

In his first Assignment of Error, the defendant insists that "The court below erred in permitting Scotty and Steven Brandon to testify, over the plaintiff in error's objections about their identification of the plaintiff in error at the jail in Murfreesboro."

On August 1, 1966 Scotty Brandon, twelve years of age, was working for the Tennessee Amusement Company as a ticket seller at the Highway 41 Drive-In Theatre, located just outside of Shelbyville on the highway between that city and Tullahoma. His eleven year old brother Steven was there to keep him company. The ticket booth was located near the drive-in entrance to the theatre, and was well lighted inside and out. About 9:00 o'clock that night Scotty counted his money; he had $122, put $50 in the money bag and $72 in the money box, and was standing outside the booth at the ticket window when two men approached him. Asked if they would like to see the show, one of them replied

affirmatively and inquired if they could get in on foot. He informed them that they could and turned around to get the tickets. One of the men placed a small automatic pistol against his side, told him to get inside and pushed him through the door into the ticket booth. This man then told Steven Brandon to give him the money bag, Steven did so, and the man grabbed the money box, and told the boys to stay inside, that there was a man across the street with a rifle who would shoot them if they tried to leave. The robbers left and ran up the highway toward Tullahoma.

Scotty described the man with the gun as "just a little bit shorter than Mr. Newman (the Sheriff), and he had real long—he had long black bushy hair, and well, he weighed about 150 or 160 pounds"; that he had on blue jeans with bleached spots in them and a shirt with red, black and white checks in it; that he was about twenty or twenty-one or twenty-two years old; and that the other man had long brown bushy hair and looked to be twenty-one or twenty-two years old. Steven described the man with the gun as having long black bushy hair, wearing blue jeans that looked like they had bleached spots in them, and a checkered shirt that had blue and red in it, and said defendant's hair at the trial was shorter and a lighter color than at the time of the robbery; and that he did not get a good look at the other man.

With reference to the confrontation of these boys with the defendant at the jail in Murfreesboro, to all of which defense counsel's objections were overruled by the court, Scotty testified that eight or ten days after the robbery he and Steven and their father, along with Shelbyville Chief of Police Roy Fann and a Mr. Ogles, went to the

Murfreesboro Jail "to look at a man and see if he was the one that robbed us"; that they went upstairs to the hall in front of the cells, and a trusty had the defendant come out of his cell into the hallway, after all of them had first looked at him through a little window; that he then recognized him as the man who held the gun on him and robbed him at the drive-in theatre; that "he was a littler shorter than Mr. Newman, and his hair was still black and long, and he weighed about 150 or 160 pounds." He said he did not know the defendant's name until after he had identified him, and that his father told him his name was Donald Lee Hancock. He identified the defendant in court, and said that that was the only time he had seen him between the robbery and the trial, and that "his hair is cut shorter and it's brown." He testified that the trip to the Murfreesboro Jail was suggested to his father by Shelbyville Police Chief Roy Fann, and that "My father told me we were going over to look at some—to look at a man and see if he was the one that robbed us"; that no one told him they were going to look at Donald Hancock; that they only looked at this one man at the Murfreesboro Jail; that he was brought out into the hallway at the suggestion of the Sheriff of Rutherford County; that after he and his brother had looked at the defendant, "I said, 'That's him.' Then, Mr. Fann asked my brother was that him, and he said, 'Yes' "; and that he based his in-court identification of the defendant upon his identification of him at the Murfreesboro Jail.

Defense counsel's objection to the testimony of Steven Brandon about the identification of the defendant at the Murfreesboro Jail was also overruled. Steven testified

that by pre-arrangement they were to nod their head if they recognized the man; that after the defendant was brought out in the hall he and Scotty nodded their heads to Mr. Fann, and that the defendant was then taken back to his cell; that when they got to the jail, Mr. Fann said, "We would like to see Don to see if they can identify him and look at him"; or "We would like to identify—I mean, see—We would like to see Donald Hancock"; that when he and his brother and father and the others went to the Murfreesboro Jail, they were going to see Don, and that Mr. Fann had told all of them that they were going over to Murfreesboro to see Don; that when they saw the defendant in the jail he was dressed in his undershorts; and that he did not notice any tattoo markings on the defendant. He identified the defendant in court, and said he was the same man he saw in jail in Murfreesboro.

The defendant testified that he was not in any way involved in the robbery, and did not hear about it until he was locked up on August 10th in the Bedford County Jail; that he was transferred from the Bedford County Jail to the State Prison in Nashville on August 11th and stayed there in the hospital three weeks; that then he was returned to Shelbyville for a hearing and was then placed in jail in Murfreesboro about the 26th of August; that while in the Murfreesboro Jail the trusty came to his cell and asked him to come out in the hallway, saying that somebody wanted to see him, and that he thought it was his attorney coming there to talk to him, and that he was dressed in his undershorts and a tee shirt; that after the boys and the others looked at him he was returned to his cell. He testified with reference to the

tattoos on his hands and arms; that he was alone in the hallway when the Brandon boys and the others with them looked at him; that his hair on August 1st was the same color as it was in court, sandy brown, that it might have been a little longer then than at present, that his hair was not black then and was no darker than at the time he testified.

Of course, the core of the complaint raised by the first Assignment of Error is that the in-court identification of the defendant by the Brandon boys was based upon and tainted by their pre-trial identification while he was in jail. According to these boys, this jail identification was eight or ten days after the robbery on August 1, 1966. The defendant was arrested for armed robbery in Shelbyville, Tennessee on August 10, 1966 and was placed in the Bedford County Jail. He escaped the next day and while being recaptured he shot and killed a highway patrolman and was wounded himself. He says he was then hospitalized three weeks in the State Penitentiary at Nashville and was placed in the Murfreesboro Jail about August 26th. At any rate, he was in that jail awaiting trial upon a charge of first degree murder, for which he was tried and convicted in Marshall County, after a change of venue, on January 31, 1967. Thus, the confrontation in the jail occurred during August of 1966, making inapplicable because of their nonretroactivity the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, both decided June 12, 1967. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (June 12, 1967).

In Stovall v. Denno, supra, after holding that *Wade* and *Gilbert* could not be given retroactive effect, the Court continued:

"We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A. 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative. The Court of Appeals, *en banc,* stated, [United States ex rel. Stovall v. Denno,] 355 F.2d [731,] at 735,

'Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, "He is not the man" could have resulted in freedom for Stoval. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the

police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station line-up, which Stovall now argues he should have had, was out of the question.' "

There was no such urgency or emergency in this case. No reason is shown or suggested, and we perceive none, for taking the perilous risk of presenting only the defendant to the Brandon boys at the Murfreesboro Jail, or why the normal and customary line-up procedure was not employed at this critical identification confrontation.

■■ Nevertheless, "A claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it." Stovall v. Denno, supra. Here, these boys' original meeting with the defendant was a memorable one. They watched the two robbers approach the ticket booth; they saw one of them draw a gun and hold it against Scotty Brandon's side and force him inside where he made Steven hand over the money bag and grabbed up the money box, and told them a man across the street with a rifle would shoot them if they tried to leave the ticket booth; this one of the robbers the boys had particularly good opportunity to observe and good reason to remember; their descriptions of him, while not in complete accord, were substantially the same. Although there is conflict in their testimony as to the way and manner by which they were to and did indicate recognition of the man at the jail and as to whether they were told the defendant's name before or after they saw and recognized him there, and although they were accompanied to the jail by their father and the Shelbyville Police

Chief and another man, we cannot say upon this record that they were coached or pre-conditioned or influenced corruptly by suggestion or otherwise to point the finger of guilt at the defendant and identify him as one of the robbers, nor that their testimony was not entitled to the weight which the jury manifestly accorded to it. We hold, in view of the totality of the circumstances exhibited in this record, that none of the defendant's constitutional rights, state or federal, were encroached upon in his identification at the jail or by admission of evidence with reference thereto; and that the in-court identification of the defendant by the Brandon boys was not, therefore, the fruit of a tainted or corrupt pre-trial identification.

■ The defendant's second Assignment of Error is that the trial court erroneously overruled his motion for a determination of his mental competence to stand trial. The motion, in the absence of the jury, was that he be committed to Central State Hospital for observation and evaluation. During discussion of the matter before the court it was established that the defendant had twice been given such an examination at Central State Hospital recently in connection with his trial for murder, one of which was subsequent to the time of the offense here in question, and that he was determined to be sane and capable of standing trial and of advising with his counsel. This Assignment is without merit.

■ The third Assignment of Error is that the trial court erred "in failing to strike from the record all reference to [his] conviction of first degree in the slaying of Sam Gibbs, in permitting the State to ask about the conviction over [his] objection and in failing to direct

the jury to disregard the reference to the murder case."

On cross-examination, prosecution counsel asked the defendant: "In order to get the record straight—are you the same Donald Lee Hancock who was charged and convicted of a felony in Lewisburg, Tennessee, and sentenced by the jury to the penitentiary for committing that felony which was the murder of one, Sam Gibbs?" The court sustained defense counsel's objection "on the ground that it is too detailed. It's properly asked of a prior conviction, but it's improper to detail the nature of the alleged crime."

Then prosecution counsel asked the defendant if he was the same Donald Lee Hancock that was convicted of Murder in the First Degree in Lewisburg, Tennessee, and the defendant gave an affirmative reply.

This Assignment is untenable. In the first place, the court sustained the objection to the first question. Secondly, the defendant did not object to the second question.

In Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385, the Supreme Court said:

"* * * It is well settled that this Court will not consider an assignment of error based on the admission or exclusion of evidence unless timely objection and exception was made in the Trial Court and the Trial Court given an opportunity to make correction. Rule 14(5), 203 Tenn. 803, 805; Turner v. State, supra, 188 Tenn. 312, 322, 219 S.W.2d 188, 193; Nichols v. State, 200 Tenn. 65, 91-92, 289 S.W.2d 849, 860, and cases there cited."

And in Harless v. State, 189 Tenn. 419, 225 S.W.2d 258, the Court said:

"No objection being interposed to the testimony of the officer as to what a bystander said it may properly be considered and given its natural probative effect as if it were in law admissible. Barlow v. Verrill, 88 N.H. 25, 183 A. 857, 104 A.L.R. 1126. Long ago this Court observed in Baxter v. State, 83 Tenn. 657, that parties 'May admit illegal evidence if they don't choose to object, if they do not want to admit it, they should object as soon as it is offered.' "

In the third place, no complaint about that was raised in the defendant's motion for a new trial. Under the settled law of this State, he may not raise these questions and complain about this matter for the first time in this Court. Supreme Court Rules, Rule 14(5). In Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780, our Supreme Court stated the rule:

"Questions raised for the first time on appeal will not be considered, or stated in another way, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial. See Ex parte Calhoun, 187 Tenn. 372, 215 S.W. 2d 789 (1948); Parker v. Reddick, 196 Tenn. 472, 268 S.W.2d 357, 45 A.L.R.2d 1096 (1954), and Rule 14(5), Rules of this Court, which provides in part:

'This is a court of appeals and errors, and its jurisdiction can only be exercised upon questions and

issues tried and adjudged by inferior courts, the burden being upon the appellant, or plantiff in error, to show the adjudication, and the error therein, of which he complains.' "

 The complaint pressed by the defendant's fourth Assignment of Error is that the court erroneously charged the jury in regard to the defense of alibi. This Assignment must be overruled for exactly the same reasons we have just stated with reference to the third Assignment, i. e., no objection was made, nor was there any defense request for further instruction upon the question, and no complaint about the court's charge was made in the motion for a new trial and the question is raised here for the first time. Furthermore, except where particular instructions are required by statute, Laury v. State, 187 Tenn. 391, 215 S.W.2d 797; Owen v. State, 188 Tenn. 459, 221 S.W.2d 515; Strader v. State, 210 Tenn. 669, 362 S.W.2d 224; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; or where the trial court wholly fails to charge on such matters as reasonable doubt or other legal principles required by the issues and evidence, Bishop v. State, 199 Tenn. 428, 287 S.W.2d 49, mere meagerness of the charge, if correct as far as it goes, is not reversible error where there is no request for additional instructions. Lunn v. Ealy, 176 Tenn. 374, 141 S.W.2d 893; McClard v. Reid, 190 Tenn. 337, 229 S.W.2d 505; Bluff City Buick Co. v. Davis, 204 Tenn. 593, 323 S.W.2d 1.

 The fifth Assignment of Error urges that the trial court overemphasized the penalties for armed robbery and simple robbery in the instructions to the jury. This Assignment is also untenable here for the same reasons

pointed out above in connection with the fourth Assignment.

By the sixth, seventh and eighth Assignments, the insistence is that the evidence preponderates against the verdict and in favor of the defendant's innocence. In reviewing the evidence under these three Assignments of Error, we are bound by the rule, stated and restated over and over by our Supreme Court, that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W. 2d 743; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32.

The rule that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of

the jury, "makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony." Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

■■ The defendant relied upon the defense of alibi. Such a defense presents an issue of fact to be determined by the credibility of the witnesses and the weight to be given to their testimony. Bright v. State, 191 Tenn. 249, 232 S.W.2d 53. The weight to be given alibi testimony is for the jury, as the judge of the credibility of the witnesses testifying in support of the defense of alibi. Palmer v. State, 187 Tenn. 527, 216 S.W.2d 25; Warren v. State, 178 Tenn. 157, 156 S.W.2d 416; Stinson v. State, 181 Tenn. 172, 180 S.W.2d 883. By their verdict, the jury rejected the defense of alibi in this case, and from a careful review of all the evidence we are of opinion that it does not preponderate against the decision of the jury upon that issue.

■ The defendant has failed to carry the burden of demonstrating that the evidence preponderates against the verdict in favor of his innocence.

We have examined this record carefully. There is no prejudicial error. The Assignments of Error are overruled, and the judgment of the trial court is affirmed.

WALKER, P. J., and GILLIAM, J., concur.