**Woodrow HOWARD, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Sept. 4, 1973.

Certiorari Denied by Supreme Court Nov. 5, 1973.

Hugh W. Stanton, Sr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, James Hall and Raymond Clift, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

OPINION

OLIVER, Judge.

Represented in the trial court and here by the Public Defender duly appointed, Howard has perfected an appeal in the nature of a writ of error to this Court contesting his Shelby County Criminal Court third degree burglary conviction for which he was sentenced to not less than three nor more than five years in the penitentiary.

By his first two Assignments of Error the defendant makes the usual assault upon the sufficiency of the evidence, insisting that it preponderates against the verdict of the jury and in favor of his innocence. In considering such Assignments, we must adhere to the time-honored rules governing appellate review, which this Court and the Supreme Court of this State have repeated time and time again. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; Morelock v. State, 3 Tenn. Cr.App. 292, 460 S.W.2d 861; Chadwick v. State, 1 Tenn.Cr.App. 72, 429 S.W.2d 135; Phillips v. State, 2 Tenn.Cr.App. 609, 455 S.W.2d 637.

In summary, the evidence shows that the Davenport Insurance Company office located in the McClure Building in Memphis was burglarized on Sunday, August 16, 1970. Entry was made by chipping one side of the hall door and doorjamb. The office safe was removed from one room to another and the door was ripped off. Missing were a roll of six-cent stamps, about $15 in cash and a pocket knife, all of which were returned to the owner after the police investigation was concluded. Several offices in the building were also broken into. Police investigation disclosed that the original entry into the building was made through an east-side window of the Dwight Holmes Realty Company. A left-hand palm print lifted from that window was determined by the Bureau of Identification of the Memphis Police Department to be identical with the palm print of the defendant's left hand. The burglary was discovered by Larry Coker, a self-employed draftsman, when he went to his office in the McClure Building that day and found that it had been broken into and ransacked.

After calling his parents and the police, Coker walked down the hall and saw two

Negro men in the office of the Davenport Insurance Company, holding paper sacks in their hands. He called on them to stop, telling them that the police were on the way. Instead, they pushed him out of the doorway, threw a crowbar at him and fled. He pursued them until he heard them saying "something about 'get a knife' after me." He gave the police a description of the two men which was broadcasted on the police radio to all units. In all, four office doors had been broken open along the hallway in that building. Coker could not identify the defendant in court as one of the two men, since two years had elapsed between the burglary and the trial.

Shortly after Coker's encounter, two Memphis policemen enroute to the scene saw two Negro men, fitting the broadcasted description, running across the street three blocks from the McClure Building. One of the two men, identified as the defendant, ran into a service station where he hurriedly took a drink of water and removed from his pocket a roll of 500 six-cent stamps and dropped it beside the water fountain. Arrested at that point, he also had 10 one dollar bills and 49 pennies and a Canadian quarter, and gave his name as Gene Nelson. The other man, identified as Willie Dean (or Lee) Boothe, who was jointly indicted with the defendant but was granted a severance and entered a plea of guilty, ran around behind the filling station and was caught by the other officer as he tried to escape through a drainage ditch, and had in his possession a cigarette lighter inscribed "Pyramid Life Insurance Company" and 10 one dollar bills and a brown-handled pocket knife.

At police headquarters, after being advised of his constitutional rights, the defendant gave the investigating officer an oral confession, later typed and admitted in evidence, in which he related that he and Willie Dean Boothe bought two new crowbars about 2:00 p. m. on August 16, 1970 and started looking for a place to break into; that they entered the McClure Building through an open window on the east

side of it and ransacked that office but found nothing; that they then went into the hall and pried open the doors of various offices; that in one office they got some change and stamps, and opened a safe by punching the pins out of the hinges with a letter opener and prying the door open with a crowbar, and were in that office "when this young white boy came to the door," and then they ran out of the building; that he was later arrested when he went into a filling station to get a drink of water and Willie Dean Boothe was caught in the drainage ditch behind the filling station; and that he had been arrested before and "was now out on three bonds of $1,000 each and charged with narcotics and larceny."

Testifying in his own defense, the defendant denied making the confession and testified that he and Boothe were at the pool room located about three blocks from the intersection where they were arrested; that he left and started home and ran across the street to avoid on-coming traffic; and that he did not burglarize the insurance company and had nothing to do with it. On cross-examination he testified that when arrested he had only about 75 cents in change in his pocket and that there was no roll of stamps by the water fountain; that he doesn't even know where the burglarized building is located, and that Boothe must have given the investigating officer the information contained in the statement above referred to; and that he has a cousin named Eugene Nelson. Without defense objection, he also admitted under cross-examination that previously he had been convicted of robbery, second degree burglary, attempt to commit a felony, fraudulent use of a credit card, larceny, and third degree burglary.

The defense of alibi presents an issue of fact to be determined by the jury. Hancock v. State, 1 Tenn.Cr.App. 116, 131, 430 S.W.2d 892; Jones v. State, 2 Tenn.Cr. App. 160, 452 S.W.2d 365.

■ By their verdict, the jury rejected Howard's alibi in this case and from a

careful review of all the evidence we are of the opinion that it does not preponderate against the decision of the jury upon that issue. The defendant has failed to carry the burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

■ Also groundless is the defendant's Assignment that the court erred in overruling his motion for a mistrial because of the statements in his confession, above noted, that he had been arrested before and was at that time on three bonds of $1000 each on charges of narcotics and larceny. The trial judge immediately instructed the jury that the defendant was not on trial for any offense other than alleged in the indictment and admonished them "to pay no attention whatsoever to any previous arrests or any statement relative to bond or otherwise." There is nothing in this record indicating that the jury was influenced to the defendant's prejudice by that statement. The presumption is otherwise, and that the jury does not disregard the court's instructions not to consider inadmissible evidence. O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759. Fully demonstrating that the jury was not prejudiced against the defendant either by those statements or by his testimony regarding previous convictions, the jury fixed his maximum punishment at five years, whereas for that offense the jury could have sentenced him to 10 years. And, furthermore, upon this record the jury would have been fully warranted in convicting him of safebreaking, for which the maximum punishment is 21 years in the penitentiary. T.C.A. § 39–904.

His final Assignment of Error is that a photograph of the palm print taken from the Dwight Holmes Realty Company window was admitted in evidence over his objection, his theory and argument being that since he was not charged with any crime with reference to the Dwight Holmes Realty Company the photograph of the palm print found on the window of that office "was not properly within the

exceptions to the rule that ordinarily evidence of any other crime is inadmissible."

■ One of the well-established and recognized exceptions to the general rule that prosecution evidence which shows or tends to show that the accused in a criminal case committed another crime not charged in the indictment and for which he is not on trial is incompetent and inadmissible, is that such evidence is admissible for the purpose of identifying the accused as the person who committed the particular crime charged when his identity as that person becomes an issue. Obviously, his identity is then a vitally material issue in his trial, and evidence relevant to that issue is not inadmissible because it proves or tends to prove him guilty of another and distinct crime, even though such evidence be prejudicial to him. Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S.W.2d 385 and authorities therein cited. See also: Webster v. State, supra; Graybeal v. State, 3 Tenn.Cr.App. 466, 463 S.W.2d 159; Snowball v. State, Tenn.Cr.App., 477 S.W.2d 240.

■ As in *Graybeal,* supra, the defendant in this case interposed the defense of alibi, thus raising an issue as to his identity as one of the persons who burglarized the Davenport Insurance Company office as charged in the indictment. As noted, the witness who saw the burglars ransacking the insurance company office could not identify them. As also noted heretofore, that office was located in the McClure Building and the proof shows that building was entered through a window of the Dwight Holmes Realty Company. Evidence that the defendant's palm print was found on that window was relevant to the issue of his identity as one who entered the building through that window and participated in the burglary of the insurance company, and was plainly admissible.

Affirmed.

GALBREATH and DWYER, JJ., concur.