JACKSON *v.* STATE.

(*Jackson*, April Term, 1943.)

Opinion filed May 29, 1943.

J. B. AVERY, SR., of Alamo, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The plaintiff in error, Ollie B. (Buck) Jackson, hereinafter referred to as the defendant, was convicted of murder in the first degree of Louise Jackson, his wife, and the jury fixed his punishment at ninety-nine years in the penitentiary. The verdict was approved by the trial judge, and following the overruling of his motion for

a new trial, defendant has appealed and assigned errors here. There is no question about the guilt of the accused. His sole defense is that he was so intoxicated at the time he shot his wife he was unmindful of what he was doing and that this would reduce the killing to murder in the second degree.

On the trial of the case the defendant did not testify. There were no eyewitnesses claiming to have seen defendant fire the shot that killed his wife, who was shot at the home of her uncle, Joe Bell, the latter living about four and one-half miles east from Alamo in Crockett County. A gun was fired through the window of the home of her uncle, the shot taking effect in the right side of deceased's face.

Those persons present in the room with deceased at the time she was shot, and who testified in this case, were Joe Bell, Mrs. Joe Bell, and Mrs. Ineta Pritchard, relatives of the deceased. There is no material difference in the testimony of these witnesses as to how the shooting occurred. The substance of their testimony is that deceased was shot while sitting in a chair in the northeast room of their home, that the shot was from a shotgun and took effect in the right side of the face and neck of deceased, that she never spoke after the shot was fired and she died instantly, and that wadding from the gun shell was sticking on her right cheek.

Defendant and deceased were husband and wife and had one small child. They lived at Humboldt until about ten days before the killing. They separated and the wife came to live in her uncle's home. A few days passed and they moved to Henderson Courts, a housing project near the Wolf Creek Ordnance Plant, where accused worked, near Milan. During the time between the leaving from

Humboldt and the moving to Milan defendant spent some of the time with deceased at the home of her uncle, Joe Bell. The wife only stayed in the Henderson Courts from Sunday afternoon until about Wednesday. On the following Monday Joe Bell brought the deceased to Alamo and she went before the draft board to have the defendant placed in the army. That afternoon Joe Bell, Mrs. Ineta Pritchard, and the deceased went to Henderson Courts near Milan to get the furniture that deceased wanted to bring home. There they found the defendant in a beer joint and he was under the influence of an intoxicant at that time. He and Joe Bell had a fight.

The next day the defendant was in Alamo and went to one James Wheeler Byrd to get him to drive him out to Joe Bell's home, but before entering the car he procured his shotgun and directed the Byrd boy where to drive. They went immediately to Bell's home where deceased was living at the time. Upon reaching the Bell home the defendant requested Byrd to go in the house and tell his wife that he wanted to see her. Byrd complied with this request and brought back a message from deceased that if defendant wanted to see her he could come in the house. Thereupon Byrd drove the defendant off some distance, and the latter got out of the car and returned to the Bell home and the killing resulted. Evidently the defendant shot his wife from the window, as witnesses testify that she was laughing and talking with the Bell family when she was killed.

Section 10768 of Williams' Code defines murder in the first degree as follows:

"Every murder perpetrated by means of poison, *lying in wait*, or by any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the per-

162

petration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, or larceny, is murder in the first degree." (Italics ours.)

It is insisted here that the State has failed to prove that the defendant was "lying in wait" within the meaning of the statute, and therefore he could not be guilty of murder in the first degree.

Mr. Wharton in his work on Homcide, 3d Ed., p. 156, says that "concealing one's self for the purpose of killing another unawares is lying in wait."

In the annotation of *Patterson* v. *State,* Ann. Cas. 1916C, 968, the annotator at page 972 says:

"In accord with the foregoing view it has been held that murder committed by shooting the deceased at his home under cover of darkness is committed by 'lying in wait'. *People* v. *Repke,* 103 Mich., 459, 61 N. W., 861; *State* v. *Henderson,* 186 Mo., 473, 85 S. W., 576."

█ The language in the statute "lying in wait" does not mean that the accused in a particular case must necessarily have this physical position.

█ Under the facts of the instant case the defendant, in our opinion, was "lying in wait" within the meaning of our statute. We are also of opinion that the defendant's conduct fell within the other alternative of the statute "or by any other kind of willful, deliberate, malicious, and premeditated killing." All the elements of murder in the first degree—namely the acts of the defendant being willful, deliberate, malicious, and premeditated—are here present.

█ █ Under our authorities the intoxication of one charged with taking the life of another can be looked to only for the purpose of determining whether or not the mind of the person so charged was capable of pre-

meditation and deliberation. *Atkins* v. *State,* 119 Tenn., 458, 105 S. W., 353, 13 L. R. A. (N. S.), 1031. Where the killing is committed by "lying in wait" the law allows no inquiry into the question as to whether or not deliberation and premeditation were present in fact, but they are conclusively presumed from the fact that "lying in wait" appears. This is, of course, the ordinary rule. However, the defendant insists that he was intoxicated to such an extent that he did not know right from wrong. But the proof shows that the defendant procured a shotgun at the home of his father, that he went to Alamo and left the shotgun at a garage, that a very short time later he went back to the garage and procured his shotgun, that he directed the Byrd boy to drive him to the home where his wife was stopping, that upon her refusal to come out and talk with him he had Byrd drive him down the road, that he then got out of the car and left Byrd some ten minutes after stopping and went back to the front porch of the home where his wife was. Coupled with this state of facts, the ability of the defendant to look through a window from the darkness and single out his wife, into whose body he placed the fatal shot, shows clearly that he had the ability to choose.

We have considered the other assignments of error and they are all overruled.

It results that the judgment of the lower court will be affirmed.