**Barney Carl CONLEY, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Nov. 26, 1974.

Certiorari Denied by Supreme Court
Feb. 18, 1975.

Joseph L. Mercer, II, Memphis (trial), Walker Gwinn, Memphis (appeal), for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Robert H. Roberts, Advocate Gen., Nashville, John W. Pierotti and Don F. Young, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

OPINION

RUSSELL, Judge.

Barney Carl Conley, represented by the office of the Public Defender, appeals his convictions for first degree murder (in the

perpetration of robbery) and employing a firearm in the commission of a felony. Consecutive sentences of fifty (50) years and one (1) to five (5) years were imposed, and they were ordered to run consecutively with the sentence previously imposed for another murder. The murder indictment in the case sub judice was in two counts. The first count charged murder in the perpetration of a robbery, which is statutory first degree murder under the provisions of T.C.A. § 39–2404; and the second count charged first degree murder under the common law (and T.C.A. §§ 39–2401, 39–2402). Conley was found guilty of "murder in the first degree in the perpetration of a robbery as charged in the first count of the indictment".

The murder victim was one Larry Butler. He, together with Anthony Newsom and Freddie Jones, were working at Church's Fried Chicken Place in Memphis at about 3:00 a. m. on February 3, 1973. A lone gunman held up the place. While the robber was getting the money out of the cash register Butler told the robber that he couldn't get away with it, whereupon the robber shot Butler. After Butler fell to the floor the robber finished cleaning out the cash register and then turned and fired several more shots into Butler, who was shot a total of eight times. The murder weapon was a long barrel .22 calibre pistol. While committing these acts the robber was seen to handle a paper bag which was on the counter by the cash register. He fled the scene on foot.

Newsom tentatively identified the defendant upon the trial as the robber. State's witness Whitten, an acquaintance of defendant, testified that he saw Conley at about 11:00 a. m. on the day of the homicide and that defendant had a long barrel pistol which he pointed at him and snapped, after telling him that he had had to kill a young man while robbing him because he had to have some money. On February 11, 1973, eleven days after the crime, Conley appeared at his aunt's home about midnight and told his uncle by marriage, a Mr. Flynn, that he had killed a boy at Church's Fried Chicken Place. Flynn gave this information to the police and an arrest warrant was taken out for Conley.

When Conley was finally located at about 6:00 a. m. on February 25, 1973, he was in a house hiding behind a chest at the foot of a bed. He grappled with the arresting officer and a second officer entered the scuffle before Conley was subdued and handcuffed.

Initial questioning on the day of arrest produced no statement. When viewed in a line-up that afternoon by Jones and Newsom, Jones could not identify him, while Newsom thought that Conley looked like the robber but could not make a positive identification. Subsequent questioning that day produced a confession.

The following day, February 27, 1973, the defendant's mother came to see him. In the presence of two detectives his mother asked him if he had shot that boy and he replied that he had. He told her that he had to have money that day for dope.

The defendant, after first telling the interrogating officers that he had lost the pistol, told them that he had sold it to one Emmett Hill. Hill admitted buying from Conley a pistol answering the description of the murder weapon, and so testified for the State. In addition, the defendant's left thumb print was lifted from the paper bag handled by the robber at the time of the crime.

The first two assignments of error question the sufficiency of the evidence to sustain a conviction. The contention is made that the evidence indicated that the defendant was so intoxicated from narcotics that he was incapable of forming the necessary intent to commit first degree murder.

■ We hold that the convicting evidence is legally sufficient. We find no proof that at the time of the crime Conley was in any way incapacitated. There was

only some evidence that on occasions he did use narcotics and drank alcoholic beverages, and proof that several hours after this crime that he was high on something. Conley's confession was detailed, indicating that he was aware of everything. The evidence does not preponderate against the verdict. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

The third assignment of error argues that it was error to allow the witness Newsom to make an in-court identification of Conley, because he had been unable to identify him in a line-up and had subsequently been given a number of photographs from which he had picked Conley's picture. Apparently the witness got a good view of the robber's profile during the robbery, and it was a profile shot that he identified from the last group (seven) of photographs shown him. Two of the seven were of the defendant. All of the pictures were mug shots except one of the defendant.

■ All of these background facts were made known to the jury, and the in-court identification was only tentative. The defendant "looked like" the robber, but the witness was not positive. Both sides rely upon the U.S. Supreme Court case of Simmons v. U. S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. That case holds that a claim that an identification procedure commencing with the showing of photographs was unduly prejudicial so as to taint a conviction is a claim which must be evaluated in light of the totality of surrounding circumstances. The Court pointed out that the danger that use of the photographic identification technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. In the case sub judice such cross-examination was pursued. In fact, the in-court identification itself was less than positive, and there was no line-up identification. However, Conley's confession, fingerprint,

possession of the weapon, etc., compose a firm basis for his conviction. We hold that this record does not reflect a conviction tainted by pre-trial photographs identification.

■ The next assignment of error complains of the introduction of fingerprint evidence, the contention being that the sack upon which the print was found remained unprotected in the Memphis Police Department and no chain of custody was established. We find that Detective Russell took the bag from the crime scene to an evidence room at police headquarters. It was not marked for fear latent prints might be obliterated. That same afternoon the laboratory technician picked up the bag from the table in the evidence room where Russell had left it, took it to the laboratory and developed the defendant's thumb print on the bag. No other such bags were in the possession of the police. Despite close cross-examination of the officers there was nothing to indicate that a different bag could have been substituted. The assignment is without merit and is overruled.

■ The next assignment of error complains of the trial judge's finding that Conley's confession was not obtained as the result of force. A full evidentiary hearing was held upon this question. Conley apparently did suffer a broken nose, but the State's theory was that this could well have happened during his resisting arrest and certainly was not caused by interrogating officers. We find that the evidence does not preponderate against the trial judge's finding that the confession was freely and voluntarily given. This is also dispositive of the next assignment of error, which says that the oral confession to Conley's mother was the product of the prior written confession, said to have been coerced, and should have been excluded as tainted fruit of that assailed confession.

■ Finally, it is contended that it was error for the Court to charge upon murder in the perpetration of a robbery as a sub-

stantive offense, and subsequently to charge upon murder in the first degree. This assignment is without merit. Murder in the first degree may be strictly statutory, when committed in the perpetration of a robbery, and need not be malicious or premeditated. Phillips v. State, 2 Tenn. Cr.App. 609, 455 S.W.2d 637 (1970); T.C.A. § 39-2402. The common law offense of murder, also encompassed in T.C.A. § 39-2402, requires that the killing be willful, deliberate, malicious, and premeditated. Premeditation is the distinctive feature of first degree murder, except where committed during a robbery, etc. The two types of first degree murder are distinct and required distinct treatment in this jury charge.

We affirm these convictions.

DWYER and MITCHELL, JJ. concur.