J.C. DICKEY, Petitioner,

v.

Mike DUTTON, etc., et al., Respondents.

Civ. A. No. 3:83–0898.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 13, 1983.
On the Merits Jan. 20, 1984.

**2**

[black redaction box]

J.C. Dickey, pro se.

William M. Leech, Jr., Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM OPINION AND ORDER

NEESE, Senior District Judge.

This is an application by the petitioner Mr. J.C. Dickey for the federal writ of habeas corpus. 28 U.S.C. § 2254. Mr. Dickey raises essentially as grounds in support of such petition: the insufficiency of the evidence to support his conviction, and the denial of his motion for a new trial on the ground of newly-discovered evidence.* It appears that, as to both of these grounds, Mr. Dickey has exhausted his available state remedies by presenting them on direct appeal to the Supreme Court of Tennessee. *See Rose v. Lundy,* 455 U.S. 509, 521, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982).

■ It is well settled that " * * * the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. * * * " *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759[26], 9 L.Ed.2d 770 (1963); *accord: De Martino v. Weidenburner,* 616 F.2d 708, 711[3] (3d Cir.1980); *Mastrian v. McManus,* 554 F.2d 813, 822[19] (8th Cir.1977), *cert. den.,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977). Accordingly, the petitioner's claim, that he is entitled to relief in this Court for the failure of the trial-judge to grant him a new trial on the ground of newly-discovered evidence, is not cognizable herein and will not be considered further by this Court.

As to Mr. Dickey's claim, that he is entitled to habeas corpus relief because of the insufficiency of the evidence, it does not appear upon preliminary consideration that he is not entitled to relief on his application. Accordingly, it hereby is

ORDERED that the respondent file an answer within 30 days herefrom in accordance with Rule 5, 28 U.S.C. fol. § 2254.

## ON THE MERITS

With their answer herein, *see* memorandum opinion and order of December 13, 1983, the respondents expanded the record herein gratuitously, Rules 5, 7, 28 U.S.C. fol. § 2254. Therefrom, this Court hereby DETERMINES that an evidentiary hearing herein is not required, Rule 8(a), 28 U.S.C. fol. § 2254, and disposes of the application of the petitioner as justice and law require, *id.;* 28 U.S.C. § 2243, on the record in the courts of Tennessee.

■ The applicant Mr. Dickey is in the custody of the respondent-warden pursuant to the judgment of February 11, 1981 of the Circuit Court of Lawrence County, Tennessee which convicted him criminally, on the verdict of a jury, of assaulting Mr. Hughie (or Huie) Davis on the evening of October 4, 1980 " * * * feloniously and with malice aforethought * * * with intent to commit murder in the first degree * * * though death [did] not ensue * * *." T.C.A. § 39–2–103 (then, T.C.A. § 39–604). Federal due-process requires that no person be made to suffer the onus of a criminal-conviction except upon sufficient proof, defined as evidence necessary to convince a trier-of-fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2791[6], 61 L.Ed.2d 560 (1979), *reh. den.,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). This Court reviews the evidence adduced against Mr. Dickey at his trial in the aforenamed Court of Tennessee to ascertain independently whether a rational trier-of-fact could have found therefrom proof of his guilt as

---

* Such evidence purportedly consisted of a confession by the mother of the petitioner that it was she, and not her son, who had committed the crime of which he was convicted.

charged beyond a reasonable doubt. *Ib.,* 443 U.S. at 324, 99 S.Ct. at 2791–2792[10]:

*Elements of the crime charged:*

 Such elements are the same as, had Mr. Davis' death ensued from the charged assault, Mr. Dickey would have been guilty of murder in the first degree. *Dains v. The State,* 21 Tenn. 439, 440–441 (headnote 1) (1841); *Phillips v. State,* 2 Tenn.Cr.App. 609, 455 S.W.2d 637, 641[3] (1970), *cert. den.* by S.Ct. of Tenn. (1970).

(a) The elements of murder in Tennessee consist of the unlawful killing by " * * * any person of sound memory and discretion * * *," of " * * * any reasonable creature in being, and under the peace of the state, with malice afterthought, either express or implied * * *," T.C.A. § 39–2–201,* and (as deemed pertinent herein): " * * * Every murder perpetrated by * * * lying in wait * * * is murder in the first degree." T.C.A. § 39–2–202(a).

(1) The aforementioned element of malice-aforethought may be inferred from circumstantial evidence of the use of a deadly weapon in an assault as " * * * one circumstance from which the trier of fact may infer malice. * * *" *McDonald v. State of Tenn.,* 486 F.Supp. 550, 553[5] (D.C. Tenn.1980).

(2) " * * * 'If the act done was an unlawful act, and the doing of it was directly perilous to human life, and so known to the wrongdoer, * * * then there is implied such a high degree of of conscious and willful recklessness as to amount to that malignity of heart constituting malice. * * *'" *Shorter v. State,* 147 Tenn. 355, 247 S.W. 985, 986 (1923), citing and quoting-from *Tarvers v. State,* 90 Tenn. 485, 16 S.W. 1041.

(3) It is an unlawful act in Tennessee to shoot unlawfully and maliciously another person. T.C.A. § 39–2–112.

(4) " * * * 'Murder committed by shooting the deceased [or surviving victim if death does not ensue] at his home under cover of darkness is committed by "lying in wait." * * *.' " *Jackson v. State,* 180 Tenn. 158, 172 S.W.2d 821–822 (1943).

(5) The fact of lying-in-wait is, of itself, evidence of a wilful, deliberate and premeditated purpose; therefore, where it is proved that a killing was of such a character that, under ordinary circumstances, it would have been murder at common law (had the victim died from the assault), and the fact of lying-in-wait exists, that fact will make it a case of murder in the first degree under T.C.A. § 39–2–202(a), *supra,* and all proof as to "intention" or wilfulness is irrelevant; so that, if there is an assault by a person lying-in-wait, with a deadly weapon, and without provocation, and death ensues, it is murder in the first degree in Tennessee, and all evidence as to the extent of the injury the person assailing intended to inflict on his or her victim is irrelevant. *Riley v. The State,* 28 Tenn. 646, 660–661 (headnote 5) (1849).

*Evidence of the existence of such elements:*

 A. The evidence is undisputed that Mr. Davis was shot with a deadly weapon and struck 4 times as he stood immediately beside the left forward-door of his automotive-van parked in the driveway of his home with its headlights lighted; such assault was made as Mr. Davis and his wife Mrs. Davis had completed parking their respective vehicles parallel at that point at or soon before 9:15 o'clock, p.m., Friday, October 3, 1980. Three bullet-holes were also found at head-level in such van. This Court hereby FINDS that a rational trier-of-fact could have found therefrom that the assailant of Mr. Davis had been lying-in-

---

* It may be that premeditation and deliberation are also elements of the crime of murder in the first degree in Tennessee, *cf. State v. Garland,* 617 S.W.2d 176, 181[2] (Tenn.Cr.App.1981), *per. app. den.* by S.Ct. of Tenn. (1981); if so, those added elements " * * * may be inferred * * * from the circumstances of repeated shots * *," *id.* [4]. " * * * The lack of provocation or cause for passion and that the victim was unarmed when attacked may also be considered. * * *" *Id.*

wait for his victim in the Davis' driveway or yard of the victim's home.

B. The doing by such assailant of such unlawful act of shooting Mr. Davis with a deadly weapon, this Court hereby FINDS also, would have permitted any rational trier-of-fact to infer reasonably that such assailant so acted impliedly with malice toward Mr. Davis and in a manner perilous directly to the latter's life.

C. The evidence that Mr. Dickey was Mr. Davis' assailant on that occasion is only circumstantial. The law in Tennessee is:

" * * * In order to convict on circumstantial evidence alone, the facts and circumstances must be so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant [applicant] and the defendant [applicant] alone. A web of guilt must be woven around the defendant [applicant] from which he cannot escape and from which facts and circumstances [there could be drawn] no other reasonable inference save the guilt of the defendant [applicant] beyond a reasonable doubt. * * *"

*State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 613[3] (1971).

This Court hereby FINDS that a rational trier-of-fact could have found from the following closely-woven and connected facts that the finger of guilt was pointed unerringly at the applicant, at him solely and alone, from a web of guilt so woven around the applicant that he cannot escape therefrom, and from which facts and circumstances no other reasonable inference could be drawn save the guilt of the applicant beyond a reasonable doubt:

*Additional evidence:*

a. At the pertinent time, Mr. Dickey resided with his mother in the Ethridge community of Lawrence County, Tennessee, as a near-neighbor of, for some 11 years, about 120 yards from, Mr. and Mrs. Davis and their daughters, including their daughter Tracy. A plain pathway was extant between these two places of abode, a portion of which was lighted by a streetlight.

b. Mr. Dickey and Miss Tracy Davis commenced an intimate liaison in 1975 which endured spasmodically until 1979 or early 1980. As a result of Mr. Dickey's personal attentions to his daughter, who was then 15 years of age, Mr. Davis had caused Mr. Dickey to be prosecuted for the statutory rape of Miss Tracy Davis, and as a result of that prosecution, Mr. Dickey had served a sentence of incarceration in the Lawrence County, Tennessee, jail. About a year after its completion, Mr. Dickey and Miss Davis resumed their intimate relationship for a period of 2 or 3 months; at her insistence it was carried-on in semi-secrecy.

Mr. Dickey moved his residence to Texas in December, 1979 and, in two weeks, Miss Davis at his expense joined him. They cohabitated there for the ensuing year before returning together to Lawrence County, Tennessee. During their respective separations, Miss Davis was married to other persons on two occasions. Thereafter, she hid-out from her immediate family and lived with Mrs. Dickey for some 6 weeks or 2 months.

c. During the last (or preceding) week of September, 1980, Mr. Dickey advised his friend Mr. Robert Vincent Rohling that he (Mr. Dickey) and Miss Davis had encountered problems; that her father, Mr. Davis, was "interfering-with" their relationship; and that he (Mr. Dickey) would " * * * like to maybe get-back to Mr. Davis for it and beat him [Mr. Davis] up. * * * " Messrs. Dickey and Davis had not been on "speaking terms" since the aforementioned prosecution.

Each of the immediately foregoing circumstances reflects the hostile feeling existing, almost immediately prior to Mr. Davis' assault, between him and Mr. Dickey. *Cf. Smithson v. State*, 124 Tenn. 218, 137 S.W. 487, 489 (1911).

f. Mrs. Davis was an eyewitness to the aforementioned assault on her husband: she had parked her automobile in their

driveway immediately to the right of, and parallel to, his automotive-van; had alighted therefrom; and was walking to the front of the vehicles and directly in front of such van. She heard multiple shots fired from her right and "saw fire" as she reached a point midway in front of such van when the firing ceased.

Mrs. Davis saw for 2 or 3 seconds in her yard near her garage an estimated 12 feet distant from her the applicant Mr. Dickey at about the time she heard her husband say, just as the shooting ceased, "Joyce, I've been shot; I'm dying!" She testified:

> * * * I stood and watched J.C. Dickey run along a ditch that goes through our yard, across the street, into the park, under a street-light—he ran under a street-light—and on up the hill toward his mother's house. * * *

She then turned her attention to her husband.

▮ Identification-testimony is significant evidence, *Manson v. Brathwaite,* 432 U.S. 98, 113, n. 14, 97 S.Ct. 2243, 2252, n. 14, 53 L.Ed.2d 140 (1977), but it is an expression of belief or of impression by the identifying witness; its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification of him or her afterward, *United States v. Telfaire,* 469 F.2d 552, 558[7] (appdx.) (C.A.D.C. 1972); *United States v. O'Neal,* 496 F.2d 368, 373[7] (6th Cir.1974). Whether the witness had an adequate opportunity to observe the offender at the time of the offense is affected by such matters as how long or short a time was available, how far or close the witness was to the offender, how good were the lighting-conditions, and whether the witness had had occasion in the past to know or see the person identified. *Ib.,* 469 F.2d at 558[8]. Consideration must be given also to the credibility of the identification-witness: whether he or she is truthful and whether he or she possessed the capacity and opportunity to make a reliable observation on the matter covered in his or her testimony. *Ib.,* 469 F.2d at 559[10].

Yet another consideration in resolving this matter is the success or lack of it of the identification-witness in resisting cross-examination and the countervailing evidence from any alibi-witnesses as casting doubts as to the accuracy of the identification made. *Manson v. Brathwaite, supra,* 432 U.S. at 113, n. 14, 97 S.Ct. at 2252, n. 14. Mr. Dickey offered the alibi-testimony of four persons, but each of them was a blood-relative or in-law of his. There were contradictions and discrepancies in the testimony of each and between this class of witnesses as well as the same in relation to statements made by some of them pretrial to investigating-officers. Although these contradictions and discrepancies can hardly be denominated as major, a rational jury could have been convinced by them (and by the positive, unshaken identification of Mrs. Davis) that Mrs. Davis' identification of Mr. Dickey was not mistaken and that the countervailing testimony of such alibi-witnesses was entitled to less credibility than that to be accorded Mrs. Davis. Mr. Dickey, testifying in his defense, denied the charge against him, denied making the purported statements to Mr. Rohling, and denied being present at the scene of the crime; his credibility was also an issue, of course.

▮ The fact that 5 witnesses countervailed the claimed eyewitness-testimony of Mrs. Davis, only one person, would not have required a rational jury to have disregarded the crucial testimony of Mrs. Davis. Her testimony could have been found by the triers-of-fact sufficient to convince them collectively beyond a reasonable doubt of this essential element of the offense charged against Mr. Dickey, if they believed that Mrs. Davis had related truthfully and accurately what had occurred in fact implicating Mr. Dickey at the scene of the crime. *United States v. Jones,* 486 F.2d 476, 479[7] (8th Cir.1973), *cert. den.,* 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974); *cf.* also *United States v. Terry,* 362 F.2d 914, 916[2] (6th Cir.1966), *cert. den.,* 385 U.S. 1029, 87 S.Ct. 758, 17 L.Ed.2d 676 (where the prosecutrix was the only wit-

ness who testified concerning the culpability of the defendant).

In sum, this Court hereby FINDS that a rational trier-of-fact could have found proof from the foregoing evidence of the guilt of the applicant Mr. Dickey beyond a reasonable doubt as well as findings of the existence of every element of the offense with which he was charged. *Jackson v. Virginia, supra,* 443 U.S. at 316, 324, 99 S.Ct. at 2791[6], 2791–2792[10]. This, coupled with the Court's adjudication herein of December 12, 1983, requires a disposition of this proceeding that the applicant hereby is DENIED all relief, Rule 58(1), F.R.Civ.P., and judgment will enter accordingly.

Should the applicant give notice timely of an appeal from the judgment to be entered herein, any such notice will be deemed also an application for a certificate of probable cause. Rule 22(b), F.R.App.P. The subjective nature of the essential findings herein could be " * * * debatable among jurists of reason * * * and the questions are 'adequate to deserve encouragement to proceed further.' * * * " *Barefoot v. Estelle,* 463 U.S. 880, ——, n. 4, 103 S.Ct. 3383, 3393, n. 4, [12], 77 L.Ed.2d 1090 (1983); therefore, in such event, a certificate of probable cause will ISSUE. Rule 22(b), *supra.*