COGDELL *v.* STATE.

(*Knoxville*, September Term, 1951.)

Opinion filed December 14, 1951.

Rehearing denied February 9, 1952.

Harry Berke, of Chattanooga, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

This appeal in error by Cogdell is from a conviction of robbery of $2,800 from the person of the victim. There is no bill of exceptions. Cogdell, alleged to have been financially unable to employ an attorney, was not represented by counsel in the trial court.

Subsequent to the filing in this Court of the technical record, including his motion for a new trial, Cogdell

petitioned this Court for the appointment of counsel to represent him here. Accordingly, this Court appointed Mr. Harry Berke, a well known attorney of Chattanooga. Mr. Berke has supplemented his excellent brief by oral argument in this Court.

The principal insistence is that Cogdell was denied that fair and impartial trial guaranteed by Article 1, Section 9 of the Tennessee Constitution, and by the Sixth Amendment to the Constitution of the United States in that (1) he was not represented by counsel nor properly advised as to his rights to have counsel appointed by the Court to aid him in the trial, and in that (2) the record does not show Cogdell to have intelligently waived the right to aid of counsel. The foundation for the immediately above stated insistence was properly laid by the motion for a new trial prepared personally by Cogdell months before Mr. Berke was appointed to defend him here.

The pertinent Tennessee Statute in keeping with the spirit of Article 1, Section 9 of the Tennessee Constitution is carried in Code Sections 11733-11734 wherein it is provided that every defendant in a criminal case is "entitled to counsel in all matters necessary for his defense, as well to facts as to law", and "if unable to employ counsel, he is entitled to have counsel appointed by the Court." This opinion assumes the financial inability of Cogdell to employ counsel.

The brief of counsel for plaintiff-in-error asserts that the same protection is afforded by the Federal Constitution and its statutes as that afforded by the Tennessee Constitution and its statute. Proceeding, therefore, upon that theory, the authorities cited and discussed in this brief are, for the most part, decisions of the Supreme Court of the United States.

In the case of *Betts* v. *Brady*, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595, it being a case decided in 1941, the Supreme Court of the United States points out the fact that under the Federal Constitution and its statute the rights of a defendant in a criminal case to the aid of counsel are more liberal towards a defendant than in many of the States under their respective constitutions and statutes. Since there is no reported decision of our own Court, in so far as we know, which is applicable to the facts of the case at bar, the merits of the hereinabove stated insistence of plaintiff-in-error in this case will be determined by application of the rule in the Federal Courts as enunciated by the Supreme Court of the United States.

In *Betts* v. *Brady*, supra, at page 1257 of 62 S. Ct., at page 1603 of 86 L. Ed., the rule is stated by the United States Supreme Court to be this: ''By the Sixth Amendment the people ordained that, in all criminal prosecutions, the accused should 'enjoy the right * * * to have the Assistance of Counsel for his defense.' We have construed the provision to require appointment of counsel in all cases where a defendant is unable to procure the services of an attorney, *and where the right has not been intentionally and competently waived.''* (Emphasis supplied.)

In *Snell* v. *United States,* 10 Cir., 174 F. (2d) 580, 581, decided in 1949, it is said that this right of the defendant ''imposes upon the trial judge the responsibility of determining whether there is an intelligent and competent waiver by the accused. To discharge that duty, the court must investigate as long and as thoroughly as the circumstances of the case reasonably demand.''

It is disclosed by the technical record in this case that on three different occasions the Trial Judge appointed

different counsel to aid this plaintiff-in-error in the Court below. On the last of these occasions two lawyers were appointed to jointly defend him. Each of the four accepted the appointment and undertook to discharge the duties thereby imposed, the first two being appointed a number of days before the case was set for trial. There is no evidence that any of these attorneys were not competent.

Plaintiff-in-error rejected the services of each of these four attorneys. When the second attorney appointed informed the Court that plaintiff-in-error did not "care to be represented by him", the Court had plaintiff-in-error brought into Court. Then this minute entry continues as follows: "* * * informed the Defendant that this was the second attorney appointed by the Court that did not please him and that he would have to stand trial on February 23, 1951, and that he could represent himself or secure Counsel of his choice."

This was several days before February 23.

When the defendant appeared in Court for trial on February 23, he was without counsel. The case was, therefore, reset for March 20. When defendant then appeared without counsel, the last two mentioned attorneys were jointly appointed to defend him. He rejected their services. The case proceeded that day to trial upon the defendant's plea of not guilty. He represented himself in that trial and in the aforesaid preparation and presentation of his motion for a new trial. This motion was overruled on March 31, appeal granted, and sixty days given within which to file bill of exceptions.

After the overruling of the motion for a new trial, plaintiff-in-error wrote several letters to the Clerk of the trial court. These letters were not a part of the record. However, after the technical record was filed in this

Court, a suggestion of the diminution of the record was allowed in order to grant the request of plaintiff-in-error that these letters be filed in this Court. So these letters are before us at his instance without regard to whether they should be.

One of the Assistant District Attorneys of Chattanooga is Mr. Cardinal Woolsey. One of the letters written by plaintiff-in-error on May 22 to the Clerk of the Trial Court reads, in so far as here pertinent, as follows: "Thanks for your letter of May 21. I have no bill of exceptions as I so informed Mr. Cardinal Woolsey several weeks ago and my appeal is based upon assignments of error and also based upon violation of constitutional rights."

It is thus made to appear that at least not less than several weeks before May 22, and after the overruling of the motion for a new trial on March 31, Cogdell had it in his mind to seek a reversal of the judgment against him on the ground that he had been denied his constitutional right to the services of an attorney.

The motion of defendant for a new trial was filed on March 27, 1951. The language of one ground of that motion is that he "was brought to trial without adequate counsel". That motion for a new trial recites that it, to quote from the language of the motion, "has been prepared without 'legal aid' or 'legal advice', * * * but solely by the defendant himself." The plaintiff-in-error, therefore, makes it appear in this record by his statements that on March 27, 1951 he was fully aware "without legal aid or legal advice" that he had a constitutional right to the aid of counsel appointed by the court, he being financially unable to employ such counsel.

Since he was aware without legal advice, "but solely by the defendant himself", of his constitutional right to

counsel when he prepared and filed his motion for a new trial, it has to follow that he was aware of that right prior to the preparation of this motion, and rejected the services of the four attorneys with full knowledge of this right.

In his petition in this Court for the appointment of an attorney to represent him here, plaintiff-in-error says that the first two attorneys appointed came to the jail to confer with him. He rejected the services of the first, he says, because he was suspicious of him and because he did not produce an official document attesting his appointment. The services of the second attorney were rejected because, while in conference at this jail, plaintiff-in-error disagreed with that attorney's ideas as to what and how the case should be presented and the effect of certain newspaper articles. The attorney in withdrawing, according to plaintiff-in-error, stated to the Court that he, the attorney, "could not get any cooperation from the defendant".

According to this petition, when the last two attorneys were appointed and went into the jury room to confer with plaintiff-in-error, he requested them to apply for a continuance of the case in order to have time to acquaint them with his defense. These two last appointed counsel refused to apply for a continuance. Whereupon he informed them that he would not avail himself of their services since they had not conferred with him and were, in the language of his personally prepared petition, "token counsel and equivalent to defendant not having counsel".

The assertion of plaintiff-in-error that these two last appointed counsel would not confer with him is not supported by any evidence in the record. According to his petition they came to the jury room for the purpose of discussing the case with him. Whereupon, he directed

them to apply for a continuance. It should be recalled that the case had twice been re-set because plaintiff-in-error had rejected counsel previously appointed. The futility of seeking another continuance is demonstrated by the fact that, according to his petition, he personally made application for a continuance on this third occasion, and the Court denied it.

▮ Considering all that had occurred from the point of view most favorable to plaintiff-in-error, the most generous thought is that he rejected the services of the last three attorneys because they would not conduct the case as he directed. That situation existed in the Circuit Court of Appeals case of *United States* v. *Gutterman,* 2 Cir., 147 F. (2d) 540, 542, 157 A. L. R. 1221, 1224. The Court's comment on that was this: "If a defendant is unable to employ an attorney he must accept such counsel as the court assigns unless he can furnish a better reason for requiring a change than he has given here or unless he chooses to dispense with counsel and undertake his own defense."

This Court is of the opinion that the only logical conclusion which can be reached from that which is disclosed is that plaintiff-in-error not only intentionally waived the right to the assistance of counsel in the Court below but, in addition, did stubbornly nullify the repeated efforts of that court to have him exercise that right. Thus, the only question remaining is whether there was an intelligent waiver by plaintiff-in-error of that right.

In an opinion written for the United States Supreme Court by Mr. Justice BLACK in *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 146 A. L. R. 357, 362, it is said: "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and cir-

cumstances surrounding that case, including the background, experience, and conduct of the accused.''

The motion for a new trial personally prepared by plaintiff-in-error without the aid of counsel or advice, the rather lengthy petition which he personally prepared and filed in this Court, the letters written to the Clerk of the lower Court and placed here with the record at his insistence, each discloses it to be a fact that this plaintiff-in-error is a well educated man, far better versed in Court procedure and in his constitutional rights than most laymen. His use of legal terms in one or the other of these writings is rather unusual for a layman. He uses such expressions as ''forma pauperis'', ''transcript of the testimony'', ''assignments of error'', ''violation of constitutional rights''. His continued conduct during the course of bringing him to trial, and in the light of his motion for a new trial, easily permits the conclusion that he planned the conduct and procedure followed for the purpose of creating and presenting here the very defense that has been presented. He clearly had it in mind when he personally prepared without advice or aid of any one his motion for a new trial and assigned therein as a reason that his right to the aid of ''adequate'' counsel had been denied. His letter of May 22 to the clerk verifies that.

But, whatever the plaintiff-in-error may have had in his mind, the particular facts and circumstances surrounding this case, including his background and experience, as disclosed by the record, and his conduct from its beginning to the conclusion of the case in the trial court all clearly show that he did intelligently, as well as intentionally, waive and refuse the right to the aid of counsel in the trial court. Under such circumstances his constitutional right in question was not violated. To

hold otherwise under this record would be to create a precedent that would quite unduly hinder the proper prosecution of those charged with the commission of a criminal offense.

It is further insisted that the record does not show plaintiff-in-error to have been advised as to the nature of the charges made against him and the seriousness thereof. ■ Code Section 11732 provides that a defendant in actual confinement is entitled to a copy of the indictment at least two days before trial. There is nothing in the record to indicate that he demanded a copy of the indictment, or that it was not furnished him. Therefore, on appeal to this Court a waiver is implied. *Moses* v. *State*, 68 Tenn. 229; and unless the record shows that a copy was not furnished it will be presumed here that it was furnished. *Taylor* v. *State*, 79 Tenn. 708. Moreover, Item 15 of his petition addressed to this Court states that the second attorney appointed for him by the Court ''read a copy of the true bill to the defendant''.

The remaining alleged error of any significance of which his petition complains is that he was not given the right ''to have compulsory process for obtaining witnesses in his favor''. Though his petition does disclose that he rejected the services of the first two attorneys who went to the jail to confer with him, it does not show that he made any application for the summoning of witnesses. His petition does state, however, that when the case came on for trial (after two postponements) and he attempted then to procure a continuance to summon witnesses ''through the customary issuance of subpoenaes'', as he expresses it, the trial judge stated that he would send for his witnesses, and he declined that offer because, this petition says, they ''should have been summoned by the customary method of subpoena''.

We are satisfied from the record that this plaintiff-in-error has been generously indulged throughout the trial of this case, and that he was accorded every right to which he was entitled, and that his trial was fair.

The judgment will be modified so as to provide that plaintiff-in-error serve a term of not less than five nor more than fifteen years in the State Penitentiary, Code Section 10803. As so modified, judgment will be affirmed.