ABRAHAM GLASGOW, Petitioner,

*v.*

STATE OF TENNESSEE, Respondent.

461 S.W.2d 25.

(*Knoxville*, September Term, 1970.)

Opinion filed November 2, 1970.

E. MICHAEL ELLIS and ROBERT W. RITCHIE, Knoxville, for petitioner.

DAVID M. PACK, Attorney General and Reporter, and LANCE D. EVANS, Assistant Attorney General of Tennessee, for respondent.

## PER CURIAM.

The respondent in this case, Abraham Glasgow, was convicted of arson in the Criminal Court of Knox County. The Court of Criminal Appeals set aside the conviction, a majority of that Court holding that "the judge failed to comply with [our] statute requiring a written waiver of counsel * * * as well as the statute for determining indigency." We granted the State's petition for certiorari and reverse, adopting the dissenting opinion of Judge W. Wayne Oliver as a part of the opinion of the Court.

All of the assignments of error made in the Court of Criminal Appeals, and the arguments on respondent's behalf in this Court, are based on the proposition that respondent never effectively waived his constitutional right to counsel in the trial court. More specifically, it is urged that under T.C.A. sec. 40-2015 it was necessary

that respondent file a written waiver of his right to counsel, and that in any event the trial court did not properly determine that respondent waived his right to counsel in a competent and intelligent manner. We agree with Judge Oliver that T.C.A. sec. 40-2015 did not apply because respondent was not indigent, and that there was an effective waiver of counsel for reasons pointed out in his opinion set out below. We note also that if T.C.A. sec. 40-2015 were construed as applying to nonindigents the body of the act would be broader than its caption, a result forbidden by Article 2, sec. 17 of the Tennessee Constitution.

We add our approval to his of the conduct of the trial judge. A study of the record indicates the trial court could hardly have done more in assuring that respondent understood his actions in refusing to employ counsel, and in assisting respondent in the trial of his cause.

■ Judge Oliver's opinion is set out below.

"I am unable to concur in the majority opinion.

"TCA secs. 40-2014, 40-2015 and 40-2016, quoted and relied upon in the majority opinion, and the ·entire legislative enactment of which those Sections are a part, relate solely to appointment of counsel for indigent persons. They are Sections 1, 2 and 3, respectively of Chapter 217 of the Acts of 1965, the caption of which recites:

'AN ACT to provide a system for the effective preservation of the right to counsel of indigent persons charged with felonious crimes; to provide for the appointment, compensation and reimbursement for expenses of counsel for such persons; to authorize the Supreme Court to make rules concerning the System thus provided; to establish the duties of the courts and the Executive

Secretary to the Supreme Court in administering the Act; and to authorize the reimbursement of counties or metropolitan governments having public defenders, subject to certain conditions and limitations.'

"Section 3(a) of that Act (TCA sec. 40-2014(a)) defines an indigent person as one 'who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney.' This defendant was not indigent within the meaning of that definition and never claimed to be. At no time before or during his trial did he ever contend that he did not 'possess sufficient means to pay reasonable compensation for the services of a competent attorney.' Instead, he simply chose to give financial priority to repair and restoration of his burned-out house, which the indictment charged him with burning, upon the theory repeatedly stated that he did not need and did not want an attorney because he was innocent and everyone in the neighborhood knew he was innocent and a jury would have no difficulty understanding that.

"According to this record, the fire occurred on July 9, 1967, a Sunday. The defendant testified that he was arrested on Wednesday, stayed in the City Jail until Friday and was then transferred to the County Jail. The defendant was brought before the court for arraignment on February 8, 1968. The indictment was read to him, but he was not required to enter a plea and did not do so. Responding to the trial court's questions, he said that he understood what he was charged with; that he did not have a lawyer and had not talked to one; that he had been out on bond ever since; that he was working as a tractor-trailer driver earning $1.70 an hour; that he and his wife were divorced subsequent to the fire, had no

children and no one to take care of except himself; that he owns the house and owed about $1400 on it; that 'I can't afford a lawyer,' giving his reason that it was taking all his income to repair the fire damage to his house; that he is 38 years of age, finished the sixth grade in school and can read and write. Thus, it clearly appears that the defendant's statement that he couldn't afford a lawyer was not a statement that he was financially unable to employ one.

"The trial judge then and there patiently and at great length explained to the defendant the seriousness of the charge, the punishment provided by law for the crime of arson and for attempted arson, why he needed the assistance of counsel, and, with manifest concern and solicitude, urged and implored the defendant to employ a lawyer. The court advised him also about how a jury is selected, the number of challenges available to him, and what was meant by challenging jurors, and in general how a trial is conducted, his right to testify or not, and his right to subpoena and present witnesses in his own behalf. To all of this, the defendant's reply and adamant position was that he was not guilty, that it would not be difficult for the jury to understand that, and for that reason he did not need and did not want a lawyer, and that he was ready for trial.

"The court properly held that the defendant was not indigent and was not entitled to have the court appoint counsel for him, and explained all of that to him. The defendant stated that he understood the explanations. The courts set the case for trial on February 22, so advised the defendant, and again urged him to employ a lawyer if he wanted one.

"On February 22, 1968, the defendant came into court without a lawyer, stated that he would like to have a lawyer and that he had changed jobs and was making more money 'and think I can afford one.' It appearing that the State witness was in the penitentiary, the court continued this case until March 28th.

"On March 28, 1968, this case being called for trial, the defendant stated he had talked to a lawyer but had not employed one. After reviewing all of the foregoing, the court held that the defendant had knowingly and intelligently waived his right to counsel, and directed the trial to proceed. The defendant did not object or protest in any way.

"Throughout the trial, the trial judge assisted the defendant in every way possible; in fact, as the trial judge stated, he bent over backwards to help the defendant. He explained to him his right to cross-examine every State witness. Upon his own motion, he ruled that an extra-judicial statement made to the investigating officers by the defendant was inadmissible, and that an investigating officer's stated conclusion as to the cause of the fire was inadmissible and instructed the jury not to consider it. After the State rested, the court excused the jury and in their absence advised the defendant in great detail regarding his right to testify or not to testify, and that if he elected to testify the State would have the right to cross-examine him. The defendant testified, interposing the defense of alibi; he was cross-examined by the Assistant District Attorney General in charge of the prosecution. The defendant presented no witnesses. Following prosecution arguments, the court explained to the defendant that he had the right to present arguments to the jury, which he declined to do.

"If ever a trial court exercised patience and made every reasonable effort to persuade an accused of the necessity to employ counsel and to see that he had a fair trial, this experienced and able and conscientious trial judge did so in this case. Considering all of this and the extraordinary assistance given to him during the trial by the trial judge, surely it cannot be said that this defendant did not receive a fair trial.

"Then after the trial, the defendant being committed to custody when the sureties upon his appearance bond surrendered him in open court, finding that he was then and thereby cut off from his employment and his source of income, the trial judge declared him indigent and appointed counsel to prepare and present his motion for a new trial and to represent him in his appeal to this Court.

"One with means and ability to employ counsel is not indigent, and he cannot be permitted to frustrate the processes of the law and completely thwart and avoid a trial indefinitely by just not employing counsel upon the theory that he does not need and does not want a lawyer because he is innocent.

"The defendant relies upon the case of *Cogdell v. State,* 193 Tenn. 261, 246 S.W.2d 5, cert. den. 343 U.S. 951, 72 S.Ct. 1044 [96 L.Ed. 1352]. That was a case involving appointment of counsel for an indigent defendant pursuant to T.C.A. sec. 40-2003, who rejected three appointed attorneys because he did not agree with their ideas as to how his case should be presented. Our case of *Leonard L. Johnson v. State,* decided January 8, 1969, likewise, involved an indigent defendant who entered a guilty plea without counsel, the trial court holding that he was not indigent after only a rather cursory and insuffi-

cient examination regarding his financial ability. The present case does not involve an indigent defendant.

"In *Cogdell v. State,* supra, our Supreme Court quoted approvingly from *Snell v. United States,* 174 F.2d 580 (10th Cir. 1949) wherein it was said that a defendant's right to counsel 'imposes upon the trial judge the responsibility of determining whether there is an intelligent and competent waiver by the accused. To discharge that duty, the court must investigate as long and as thoroughly as the circumstances of the case reasonably demand'.

"The Court in *Cogdell* also quoted as follows from *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461: 'The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'

"The Court also said in *Johnson v. Zerbst,* supra:

" 'It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." '

\* \* \* \* \* \*

" 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper

waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.'

"Waiver of the constitutional right to counsel is permitted. *Jones v. State,* 206 Tenn. 245, 253, 332 S.W.2d 662. In *Edgemon v. State,* 195 Tenn. 496, 260 S.W.2d 262, the Court said: 'A defendant is not unlawfully deprived of representation by counsel where he intentionally and competently waives the right to such representation.'

"In *United States v. Plattner,* 330 F.2d 271 (2nd Cir. 1964), the Court recognized the right of an accused to represent himself:

" '* * * Implicit in both amendments [Fifth and Sixth] is the right of the accused personally to manage and conduct his own defense in a criminal case.

\*　\*　\*　\*　\*　\*

" '* * * But the Constitution does not force a lawyer upon a defendant. He may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson v. Zerbst,* 304 U.S. 458, 468-469, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461.' The Supreme Court again referred to the defendant's "recognized privilege of conducting his own defense at the trial" in *Price v. Johnston,* 1948, 334 U.S. 266, 285, 68 S.Ct. [1049] 1059, 1060, 92 L.Ed. [1356] 1346.'

"This record clearly demonstrates that the trial judge's examination and investigation concerning the defendant's financial circumstances and ability, was as careful and thorough and complete as could possibly be required by any reasonable standard. His findings that

this defendant was not indigent, and that he must be held to have understandingly and intelligently waived his right to counsel, after exceptionally thorough and extensive and repeated explanation of his rights during which he was urged and implored to employ counsel, were not only justified but were also required—there was no alternative.

"Upon this record, what will happen when this case is returned to the trial court for a new trial if this defendant again comes into court without a lawyer, and it again appears that he is not indigent, and he again says that he doesn't need or want a lawyer? Must the trial court appoint a lawyer for him in those circumstances notwithstanding his adamant refusal to employ counsel? If the court does not do so, may the defendant avoid a trial upon such a ruse or stratagem? The answers to these questions are obvious. Patently, to permit a non-indigent person to avoid trial by such a device would utterly paralyze the courts and render them completely impotent to enforce the laws and administer justice. This cannot be.

"In my judgment, the trial court did all that the law requires. He went the second mile and further in examining and exploring the defendant's financial circumstances, in explaining his rights and advising him, in assisting him during the trial, and in protecting his interests in every reasonable way. He committed no error. As a result of his zealous concern, the defendant has had a fair trial.

"The judgment of the trial court should be affirmed."

The judgment of the Court of Criminal Appeals is set aside, and the judgment of the trial court is affirmed.