**Calvin HENDON, alias Carlos Craig, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Sept. 6, 1972.

J. Thomas Mann, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., J. B. Hagler, Jr., Asst. Atty. Gen., Nashville, Gary Daniel Gerbitz and John W. Goza, Jr., Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

## OPINION

OLIVER, Judge.

Representing himself, Hendon was convicted in the Criminal Court of Hamilton County of escaping from the Hamilton County Jail, the jury fixed his maximum sentence at two years in the State Penitentiary and the trial court entered judgment sentencing him to the penitentiary for not less nor more than two years. By appeal in the nature of a writ of error he has brought his case to this Court for review.

When this case was called for trial, the record shows the following colloquy between the court and the defendant:

"THE COURT: Let the defendant stand up.

(The defendant complied.)

THE COURT: As the Court understands you are refusing to let the Court appoint an attorney to represent you, and of course the record shows that you have refused to sign an affidavit of indengency [sic], is that correct?

THE DEFENDANT: Yes sir.

THE COURT: Then you are insisting on representing yourself in this case, and that's what you want to do, is represent yourself?

THE DEFENDANT: It is."

The defendant conducted his own trial, with the help of suggestions by the trial judge, including selection of the jury, entering his plea of not guilty, exclusion of the witnesses from the courtroom under the Sequestration Rule, and cross-examination of the State's witnesses. After explanation by the court concerning his right to testify and not to do so, the defendant elected not to testify or present any evidence, and notwithstanding explanation of his right to present an argument to the jury he declined to do so. After pronouncing sentence, the defendant asked the court if he could have an attorney. The court talked to him about his financial and economic circumstances and found him to be indigent and said an attorney would be appointed.

The evidence conclusively established that while on parole from the State Peni-

tentiary the defendant was convicted in the Chattanooga Municipal Court of carrying a pistol and discharging a firearm within the city, and on that account he was arrested and placed in jail under a warrant obtained by the Probation and Parole Board charging him with violation of his parole, and that he escaped while working as a trusty and was captured some 30 or 40 minutes later.

The trial was on July 6, 1971. The court allowed the defendant 30 days in which to file a motion for a new trial. On July 23, 1971 an order was entered adjudging him to be an indigent and appointing counsel to represent him. That attorney filed a new trial motion on August 2, 1971 challenging the sufficiency of the evidence. On September 13, 1971 appointed counsel filed an amendment to the new trial motion charging (1) that the defendant did not have the aid of appointed counsel at his trial, and was incompetent to make the decision to represent himself at that time because he was under the influence of drugs, (2) that his name is Carlos Craig and that he was indicted, tried and convicted under the erroneous name "Calvin Hendon, Alias Carlos Craig," (3) that incompetent evidence was introduced against him which "probably could have been excluded" if he had been represented by counsel, (4) that he was incompetent to represent himself because he was unaware of trial procedure and that he would have testified if he had been properly advised of his right to testify in his own behalf.

On September 24, 1971 the defendant's counsel filed another amendment to the new trial motion, reiterating that the defendant was incompetent to determine that he should represent himself at his trial because he was under the influence of drugs, and mentally retarded with an IQ of 68, and was denied due process by not having court-appointed trial counsel.

At the hearing on his new trial motion, the defendant testified that he refused appointed counsel at his arraignment because at that time he could afford retained counsel; that by the time of his trial he was indigent because his financial reserves had been spent for medical treatment of his wife; that he thought counsel had been assigned to him but a court officer told him on the day of his trial that he did not have an attorney, and he thought it was then too late to obtain counsel and decided to represent himself; that the morning before the trial he took "four Red Devils and I shot two Darvon and two Benadrils"; that he did not know what he was doing at the trial, "wasn't thinking on my own powers, my feelings wasn't really my own"; and that the reason he did not testify at his trial was the influence of the drugs told him not to do so.

Three witnesses who were incarcerated in the same jail testified that on the day of the trial they saw the defendant take some drugs, one saying that he saw the defendant take some Red Devils, another that he saw him take drugs three or four times that morning and that he acted drunk and appeared as if he were half-asleep, and another that he saw him taking pills and inject something into his arm in the jail the morning of his trial and that his voice sounded shaky. It was stipulated that a psychological test made of the defendant in 1963 showed he was moderately mentally retarded and had an IQ of 68.

The court overruled the motion for a new trial, noted that the defendant did not act abnormally during the trial, but made no finding as to his competency to waive counsel. Overruling the new trial motion, the court said:

"Also in this file, at date of indigency the defendant did answer the questions of the Court, but when this affidavit of indigency was presented to the defendant he would not sign it. If the Court remembers correctly he stated he had sufficient money to employ his own attorney, and that he would get his own attorney. Then the Court allowed him time with which to obtain his own attorney, but he didn't obtain his attorney,

and actually on the date of trial he elected to represent himself.

"Now if he was under the influence of anything the Court certainly couldn't denote it, but if he was, assuming that his testimony is correct, he is the one that brought it upon his own self; the Court didn't, or the Attorney General's office didn't have anything to do with putting him under the influence of any drugs, and the Court had no knowledge that he was under the influence of any drugs. So actually the only thing the Court can do is to offer to appoint an attorney to represent a defendant; if he refuses to accept an appointed attorney; of course, he can't have his choice of what attorney he wants either. By appointment we appoint attorneys according to the roster going from "A" down through the alphabet of attorneys so that no certain defendant will have his own choice. We try to be fair about appointing attorneys where one attorney won't receive all the indigent cases, or a great number of them, but where it is spread out among all the members of the bar. But nevertheless he elected to represent himself."

■ Here the defendant raises only one question contained in his motion for a new trial. Under the settled law of this State, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and questions raised for the first time on appeal will not be considered. Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; State ex rel. Carroll v. Henderson, 1 Tenn.Cr.App. 427, 443 S.W.2d 689; Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780.

■ The only Assignment of Error urged upon us here and included in the defendant's original and amended new trial motion is that the trial court erred in permitting him to proceed to trial without the assistance of counsel without first making inquiry and determining whether at his trial he was competently and intelligently and understandingly waiving his right to be represented by counsel. This record shows clearly that no such inquiry or determination was made. We reverse.

By both the State and Federal Constitutions every defendant in a criminal case is entitled to the assistance of counsel. Article I, Section 9, Constitution of Tennessee; Sixth Amendment to the Constitution of the United States. The constitutional provision of this State has been implemented by statute. T.C.A. § 40–2002 provides that every person accused of any crime or misdemeanor is entitled to counsel in all matters necessary for his defense, "as well to facts as to law." And T.C.A. § 40–2003 provides that if the accused is unable to employ counsel he is entitled to have counsel appointed by the court. Further implementing this right is the statute providing for court-appointed counsel for indigents charged with felonies. T.C.A. §§ 40–2014 to 40–2028.

■ A defendant may waive his constitutional right to be represented by counsel. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L. Ed.2d 167; Glasgow v. State, 224 Tenn. 626, 461 S.W.2d 25. But such a waiver of the right to counsel must be made competently and intelligently. Johnson v. Zerbst, supra; Betts v. Brady, 316 U.S. 455, 62 S. Ct. 1252, 86 L.Ed. 1595; Cogdell v. State, 193 Tenn. 261, 246 S.W.2d 5, cert. den. 343 U.S. 951, 72 S.Ct. 1044, 96 L.Ed. 1352.

In Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, the Court said:

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An ac-

cused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Johnson v. Zerbst, 304 U.S. 458, 468, 469, 58 S.Ct. 1019, 1024, 1025, 82 L. Ed. 1461."

In Johnson v. Zerbst, supra, the Court said:

"The Sixth Amendment guarantees that: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious.

\* \* \* \* \* \*

" . . . It has been pointed out that 'courts indulge every reasonable pre-

sumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

\* \* \* \* \* \*

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

And in Snell v. United States, 174 F.2d 580 (10 Cir. 1949), from which our Supreme Court quoted approvingly in Cogdell v. State, supra, and in Glasgow v. State, supra, the Court said:

"The right to the assistance of counsel is one of substance, and it is not satisfied by mere legalistic formality. Willis v. Hunter, 10 Cir., 166 F.2d 721, certiorari denied, 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772; Fields v. Hunter, 10 Cir., 167 F.2d 547. It is the duty of the trial judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of the constitutional right at every stage of the proceedings. That protecting duty imposes upon the trial judge the responsibility of determining whether there is an

intelligent and competent waiver by the accused. To discharge that duty, the court must investigate as long and as thoroughly as the circumstances of the case reasonably demand. The fact that an accused may state that he is informed of his right to counsel and desires to waive such right does not automatically end the responsibility of the court. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309."

So, it is not surprising that the Legislature of this State has spelled out in detail the duties of a trial court with reference to such waivers by indigents. T.C.A. § 40–2016 provides as follows:

"Before a court shall accept a written waiver of the right to counsel, it shall first advise the accused in open court of his right to the aid of counsel in every stage of the proceedings. The court shall at the same time determine whether or not there has been a competent and intelligent waiver of such right by inquiring into the background experience and conduct of the accused and such other matters as the court may deem appropriate. If a waiver is accepted by the court, such waiver shall be spread upon the minutes of the court and filed with the papers of the cause."

As noted, at the conclusion of the trial, immediately after pronouncing sentence, the court determined that the defendant was then indigent and stated that an attorney would be appointed to represent him. Surely it cannot be said that he was not indigent at the beginning of the trial. However, whether indigent or nonindigent, his financial and economic status has no determinative bearing upon the question of whether he competently and intelligently and understandingly waived his constitutional right to counsel, for the exalted grandeur of the right is that it knows no such bounds and belongs to the rich and poor and the great and small alike.

So, then the law is unquestionably and firmly established that before permitting either an affluent or impoverished criminal defendant to proceed to trial without the assistance of counsel, the trial court must first determine, after adequate inquiry and investigation, whether the accused is competent to make the decision to waive assistance by counsel and whether his decision to do so was made understandingly and intelligently. For, "where a person convicted in a state court has not intelligently and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel, the Due Process Clause invalidates his conviction * * *" Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L.Ed. 126; Moore v. State of Michigan, supra.

Thus, failure of the trial court to make this initial determination, after inquiring into and considering all the relevant facts and circumstances, particularly where, as here, the evidence raises a serious question as to the defendant's competency and comprehension, constitutes reversible error.

Inasmuch as this case must be remanded for a new trial for the reasons stated, we call attention to the erroneous sentence pronounced by the trial judge, sentencing the defendant to not less than two years nor more than two years in the penitentiary. The punishment fixed by T.C.A. § 39–3807 is imprisonment in the penitentiary for not less than one nor more than five years. The jury fixed the maximum sentence at two years. The judgment entered by the court should have sentenced the defendant to not less than one year nor more than two years in the penitentiary.

The judgment of the trial court is reversed and this case is remanded thereto for a new trial.

DWYER and O'BRIEN, JJ., concur.